### THE STATE OF TEXAS V. HEIRS OF CHARLES ZANCO ET AL.

Delivered January 5, 1898.

**1. Land Certificate—Headrights to Heirs Assets of Estate.**

Certificates issued under the Act of February 9, 1850 (Paschal's Digest Laws, article 4158), authorizing the Adjutant-General to issue headright certificates to the heirs or legal representatives of those who fell with Fannin and Travis, were not purely a gift, but were in recognition of pre-existing rights, and constituted assets in the hands of the administrator.

**2. Jurisdiction of Probate Court—Presumption.**

The probate court having general jurisdiction of the estates of decedents, in the absence of any fact showing a want of jurisdiction, every presumption will be indulged in favor of its judgments.

**3. New Trial—Diligence.**

An application for new trial on the ground of newly discovered evidence is properly denied where no diligence to obtain the evidence is shown, and it is not stated that it was unknown to applicant before the trial.

**4. Same—State as Litigant.**

When the State enters its courts as a litigant, it must be held subject to the same rules as other litigants.

APPEAL from San Augustine. Tried below before Hon. TOM C. DAVIS.

*M. M. Crane, E. P. Hill*, and *Rufus Price*, for the State.

*S. W. Blount* and *S. M. Davis*, for appellees.

FLY, ASSOCIATE JUSTICE.—The State of Texas, through W. A. Field, County Attorney of San Augustine County, instituted this suit against the unknown heirs of Charles Zanco and a number of parties in possession of parts of the land, to escheat the same to the State. No heirs of Zanco appeared. The trial judge, after hearing the testimony, instructed a verdict for the appellees who were claiming the land.

The evidence shows that Charles Zanco was killed at the fall of the Alamo on March 6, 1836, and that under the provisions of the Act of February 9, 1850, a certificate for one-third of a league of land was granted to his heirs. In a regular administration of the estate of Zanco, an order of sale was granted by the probate court of Harris County and the land certificate was regularly sold to William R. Baker, and the sale was afterwards confirmed by the court. There is no evidence as to when the administration was begun. The appellees claiming the land showed perfect title from William R. Baker.

The following agreement was entered into between the parties to this suit:

"It was here agreed by the parties that all the defendants herein claim and hold the land under properly executed and recorded conveyances from and under William R. Baker, the grantee in the foregoing, and that said defendants are the owners of said land, if the said administrator's deed is valid and passed the title out of said estate of Charles Zanco to William R. Baker."

That agreement seems to have been lost sight of in briefing the case for appellant, and objections are raised to matters which can not have any force in view of that agreement. Clearly, if the deed of the administrator was held to be valid it was the duty of the trial judge to instruct a verdict for appellees, and there is no merit in the contention that the facts should have been submitted to the jury. The facts were all one way, and it was the duty of the judge to declare their legal effect. If his declaration was correct, this case must be affirmed; and if not, a reversal will necessarily follow.

On February 9, 1850, the Legislature of Texas passed an act entitled "An Act for the relief of the heirs of those who fell with Fannin, Ward, Travis, Grant, and Johnson during the war with Mexico in the years 1835 and 1836," in which it was provided that "the Adjutant-General shall, and he is hereby required, to issue to the heirs of those who fell with Fannin, Ward, Travis, Grant, or Johnson, their heirs or legal representatives, attorneys or assigns, certificates for headrights in right of those who were heads of families, for one league and labor of land, and in right of those who were single men, for one-third of a league of land." Paschal's Dig., art. 4158. It is contended by appellant that this act was passed simply to make a gift to the heirs of those who fell during the Texas Revolution under the leaders named, and therefore the land did not become assets of the estates of such decedents. We are of the opinion, however, that it was nothing but a recognition of an express or implied contract or obligation on the part of the State government to soldiers who had given their lives in defense of their country, and, as has time and again been decided, the certificate became assets in the hands of the administrator. Ames v. Hubby, 49 Texas, 710; Rogers v. Kennard, 54 Texas, 35; Todd v. Masterson, 61 Texas, 619.

That the Act of 1850 was only a recognition of pre-existing rights is indicated, we think, by section 4 of the act, which provides: "This act shall extend only to the heirs of those who fell as mentioned in the second section of this act, and of them only to those in whose right no certificates for headrights have been issued." Paschal's Dig., art. 4158. If a naked donation had been intended, it would seem that the heirs of all who fell while under command of the officers named would have been remembered, and not those only who had for some reason failed to obtain the headright certificates given to men who settled in Texas. The manner of proving that no such certificate had been issued is fully provided for in the act. The act was not extending a gratuity, it was paying a debt impliedly due by the State.

The certificate being assets of the estate of Charles Zanco, if the ad-

ministration was legal and valid the administrator's deed passed the title to the land out of the estate, for the record discloses an order of sale by the probate court, a sale to William R. Baker, and a confirmation of the sale.

It is insisted by appellant that the administration was null and void, because the administration was not begun until fifteen years after the death of Zanco, and the presumption would be that all the debts were barred, citing Paul v. Willis, 69 Texas, 261. The decision cited bears out the contention, but there are no facts in the record which would make it applicable. There is no evidence whatever as to the time when the administration was begun. It may have been a short time after the death of Zanco. Neither does the record show that Zanco did not have property in Harris County, or that he did not reside there prior to his death. There is no proof, either, that tends to show that Zanco was a foreign soldier, and we must conclude that he was a citizen.

The probate court of Harris County had general jurisdiction of the estates of decedents, and in the absence of any fact showing a want of jurisdiction every presumption will be indulged in support of its judgment and decrees. Templeton v. Ferguson, 89 Texas, 47.

To the motion for a new trial was attached a copy of the probate record, showing that the administrator's bond was approved in 1851, and it is alleged that the testimony was newly discovered. That there was no diligence whatever to have the testimony at the trial is apparent from the record. Appellees introduced the orders of the probate court in the administration of Charles Zanco's estate, and with the least amount of diligence appellant could have ascertained when the administration was begun. There is nothing in the record that indicates that there was any effort made to obtain the evidence for which a new trial was desired, and it was not intimated that it was not known to appellant before the trial. Frizzell v. Johnson, 30 Texas, 31; Railway v. Forsyth, 49 Texas, 171; Traylor v. Townsend, 61 Texas, 144; Moores v. Wills, 69 Texas, 109.

When the State of Texas enters its courts as a litigant, it must be held subject to the same rules that govern other litigants, and having failed to meet the case made by appellees, and not having shown any grounds for a new trial, it must abide the consequences.

The judgment will be affirmed.

*Affirmed.*

Writ of error refused.