[Civ. No. 2142.    Third Appellate District.—June 5, 1920.]

## THE PEOPLE, Appellant, v. KINGS COUNTY DEVELOPMENT COMPANY (a Corporation), Respondent.

[1] DISMISSAL OF ACTIONS — FAILURE TO SERVE SUMMONS WITHIN THREE YEARS—CODE SECTION MANDATORY.—The provisions of section 581a of the Code of Civil Procedure are mandatory, and the defendant's right to a dismissal becomes absolute where the summons has not been served and returned within the time prescribed by said section.

[2] ID.—SECTION 581a, CODE OF CIVIL PROCEDURE, CONSTRUED—APPLICATION TO STATE AS LITIGANT.—Section 581a of the Code of Civil Procedure is not, in the true legal sense, a statute of limitations, but involves merely a matter of procedure to which all litigants, including the state, must conform to entitle them, after they have commenced an action, to proceed further with the prosecution thereof.

[3] ID.—LEGISLATIVE INTENT — CONSTRUCTION OF LAWS TOGETHER.— Where the legislature has established a particular policy with respect to a particular subject of legislative cognizance, which policy is in derogation of that of the rule of the common law, all the law or sections of the code bearing upon or pertaining to that particular subject should be read and considered together, or as a whole, or by the light of each other, if the language of any one section or part of the law is so dubious or uncertain as to render its meaning or the legislative intent at the bottom of it lacking in clearness and certainty.

[4] ID.—STATE AS SUITOR—CONFORMANCE WITH RULES OF PROCEDURE AND PRACTICE.—The state, when it voluntarily becomes a suitor in its courts and so brings an action for relief of any character, is subject to or bound by the same rules of procedure or practice as to the prosecution of such actions as govern and apply to litigants suing in their individual capacities.

[5] ATTORNEY AND CLIENT—COMMISSION OF CASE TO ATTORNEY—FAILURE TO COMPLY WITH LAWS—NEGLIGENCE—LIABILITY OF CLIENT.— Every litigant, including the state, who has committed his case to

the care of a lawyer must suffer from the negligence or default of his attorney in complying with the procedural rules required to be observed to preserve the rights of parties in actions pending before the courts, and the negligence of an attorney in the management of a case in court whereby his client suffers some loss or injury is imputable to the client himself, the legal relation existing between client and attorney being that of principal and agent.

APPEAL from an order of the Superior Court of Kings County dismissing an action for failure to serve the summons within three years. M. L. Short, Judge. Affirmed.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, John T. Jones, C. F. Culver, R. Justin Miller and Wheaton A. Gray for Appellant.

T. T. C. Gregory, D. Hadsell and Gibson, Dunn & Crutcher for Respondent.

HART, J.—This is a suit in equity and was commenced by the state of California, through its attorney-general, by the filing of a complaint on the twenty-first day of November, 1914, for the purpose of obtaining a decree annuling a patent to certain state lands, the defendant having acquired title to said patent through certain mesne conveyances coming down from the original patentee. The patent in question was issued on November 23, 1904. Summons in the action was issued June 14, 1915, and was served on September 10, 1918. A notice of motion to dismiss the action was served on the attorney-general on the twenty-fifth day of September, 1918. The ground of the motion was: "That the summons and the complaint in said action were not served upon the defendant until more than three years after the commencement of said action, and that also on account thereof the above-entitled court no longer has jurisdiction over said action."

The court below granted the motion, and from the order granting said motion the people prosecute this appeal.

[1] The order dismissing the action was based upon section 581a of the Code of Civil Procedure. The particular provisions of said section which are material to the inquiry presented by this appeal read as follows: "No action here-

tofore or hereafter commenced shall be further prosecuted, and no further proceedings shall be had therein, and all actions heretofore or hereafter commenced must be dismissed by the court in which the same shall have been commenced, on its own motion, or on motion of any party interested therein, whether named in the complaint as a party or not, unless summons shall have issued within one year, and all such actions must be in like manner dismissed, unless the summons shall be served and return thereon made within three years after the commencement of said action. But all such actions may be prosecuted, if appearance has been made by the defendant or defendants, within said three years in the same manner as if summons had been issued and served."

The provisions of said section are mandatory, and if the section applies to the state, then the trial court lost jurisdiction of the action and could proceed no further therein, except to dismiss the action. In fact, the right to a dismissal becomes absolute where the summons has not been served and returned within the time prescribed by the said section (*Sharpstein* v. *Eells,* 132 Cal. 507, [64 Pac. 1080]), and prohibition will lie to prevent the trial court from adopting any other course than to dismiss the action (*Modoc Land etc. Co.* v. *Superior Court,* 128 Cal. 255, [60 Pac. 848]), and such writ will lie to prohibit the issuance of an *alias* summons after the lapse of three years after the commencement of the action. (*White* v. *Superior Court,* 126 Cal. 245, [58 Pac. 450].)

The contention of counsel for the appellant is, however, that section 581a "is nothing more nor less than a statute of limitations, and does not bind the state, and that it was not the purpose or intention of the legislature in adopting it that it should bind the state."

The section, it will be observed, contains no express provision that the state shall be bound thereby. It is well settled and well understood that a state is not bound by statutes of limitations, unless by express words or by necessary implication such statutes make the state subject to their provisions or restrictions.

Statutes of limitations are, in a strict or legal sense, statutes of repose, and "are such legislative enactments as prescribe the periods within which *actions may be brought*

*upon certain claims,* or within which certain rights may be enforced." (Wood on Limitations, 3d ed., sec. 1.) The same author further observes: "Those statutes which merely restrict a statutory or other right do not come under this head (i. e., under the head of 'statutes of limitations'), but rather are in the nature of conditions put by the law upon the right given. Thus, a statute that prescribes the term of court at which an indorsee of a note is required to sue the maker in order to hold the indorser liable (*McDaniel* v. *Dougherty,* 42 Ala. 506; *Davidson* v. *Peticolas,* 34 Tex. 27), or the time within which writs of error shall be brought (*Pace* v. *Hollaman,* 31 Tex. 158; *Trim* v. *McPherson,* 7 Cold. (Tenn.) 15), or a statute which fixes the time within which lands sold at execution may be redeemed (*Reynolds* v. *Baker,* 6 Cold. (Tenn.) 221), or within which a judgment or other lien shall be enforced (*Battle* v. *Shivers,* 39 Ga. 405), or which merely postpones a claim unless enforced within a certain time (*Chandler* v. *Westfall,* 30 Tex. 475), or which provides that a certain class of evidence shall be admissible if action is brought within a certain time, are not statutes of limitation within the legal sense of the term. But statutes which provide that no action shall be brought, or right enforced, unless brought or enforced within a certain time, are such statutes of limitation, even when they do not extinguish the claim."

The general legislative policy of California is that the state shall be bound by its statute of limitations with respect to the bringing of actions for the enforcement of any and all such rights as may accrue to the state. (Code Civ. Proc., sec. 345, and sections immediately preceding in the same chapter; also, Id. sec. 315.) The last-named section fixes the period of limitation within which the state may bring an action for or in respect to real property, or the issues or profits thereof, by reason of the right or title of the people to the same, at ten years; and, in passing, we may observe, although the observation is not germane to the discussion called for herein, that it has been held that said section applies to an action by the state where, as here, the purpose of the action is to procure a cancellation of a patent issued by the state for a parcel of its land, such action being "in respect to real property." (*People*

v. *Kings County Development Co.,* 177 Cal. 529, 534, [171 Pac. 102].)

The object intended to be attained by section 581a of the Code of Civil Procedure is, obviously, to compel reasonable diligence in the prosecution of an action after it has been commenced, and thus afford the party or parties against whom it is brought an opportunity to present such evidential support to any defense he or they may have thereto as may be available at the time the action is instituted, but which may be lost or destroyed through the death of witnesses or otherwise before the action is brought to issue by reason of an unreasonably long delay ·in serving the defendant or defendants with appropriate legal process notifying him or them of the pendency of the action. It is settled in this state that even independently of any express statutory warrant therefor, the courts may, in the exercise of a power inhering in courts of justice, dismiss an action for unreasonable delay in its prosecution.

In the early case—*Dupuy* v. *Shear,* 29 Cal. 238—the proposition that the courts were possessed with the inherent power of dismissing actions because their prosecution by the plaintiff had been inexcusably delayed after their commencement was laid down, and the court there said: "We see no good reason why the court after the commencement of a suit may not dispose of it by striking the complaint from its files when the plaintiff has failed for many years to take any effective measures to procure a service and give the court jurisdiction of the person of the defendant. Certainly, it was never contemplated that a party may file a complaint and issue a summons, and then wait an indefinite period of time till the witnesses of the other party are dead, or his evidence destroyed, before he takes any effectual steps to procure a service of process. We do not think such a case is provided for in sections 148 and 149 of the Practice Act; but the court, having got possession of the case by the commencement of a suit, must have some power to dispose of it, when the plaintiff declines or neglects to proceed." (See, also, *People* v. *Jefferds,* 126 Cal. 296, [58 Pac. 704]; *Bernard* v. *Parmelee,* 6 Cal. App. 537, [92 Pac. 658].)

It was obviously upon precisely the same theory or for the identical reason which it is declared in the above excerpt

supports the inherent power of the court to dismiss actions because of inexcusable delay in their prosecution that section 581a was founded, thus expressly vesting in the courts the right to exercise a power which was theretofore and, indeed, still is, an inherent attribute of their constitution as judicial tribunals and specifically fixing the period of time which shall be deemed to constitute an inexcusable delay. [2] And, as above indicated, the question here to be determined is whether said section is, in the true legal sense, a statute of limitations by the terms of which the state is not bound, since the section contains no express provision that it shall apply to the state.

We have not been able to persuade ourselves that any other but a negative reply to that question may reasonably be returned. We are of the opinion rather that the section involves only a condition to which all litigants, including the state itself, must conform to entitle them, after they have commenced an action, to proceed further with the prosecution thereof. The provisions of the section, in other words, involve merely a matter of procedure—that is, the regulation of the conduct of the parties plaintiff with respect to actions after the commencement thereof for the same reason or purpose which is at the bottom of many other provisions of the code as to procedure, to wit: to facilitate or bring about a final or as speedy a disposition of the litigation as possible or as is deemed by the legislature to be consistent with the rights, not alone of the plaintiff, but also of the adversary party or parties, and also to clear court calendars of cases as expeditiously as possible, thus and thereby preventing an accumulation upon such calendars of actions in which, by reason of long delays in their prosecution, it may become difficult, if not in some instances impossible, to adjudicate the issues according to the real merits or justice of such causes. Indeed, the terms of the section are, in their nature and purpose, analogous to the provisions of the Code of Civil Procedure which prescribe a time limit within which a bill of exceptions, or a notice of appeal, or a notice of intention to move for a new trial, or petition for a hearing in the supreme court after a cause has been heard and decided by a district court of appeal, must be filed. It surely will not be contended by counsel for the state that these last-mentioned provisions are

not alike applicable to the state, as a litigant, as to private individuals likewise invoking the power or aid of the courts or who are compelled to appear therein to contest rights asserted against them.

The above view or construction of section 581a is sound in principle and in harmony with reason, in confirmation of which proposition we need go no further for an example than the case now before us, involving, as it does, an action which impeaches the title of the respondent to the lands in question. The effect of an action brought in the courts to determine the ownership of or title to real property is in a measure to put a cloud upon the title to such property, which will exist during the pendency of the action or until the latter is entirely disposed of. It thus can readily be perceived that if the state, in such a case, may postpone, *in infinitum,* the issuance of the service and return of summons, the defendant, who may have a meritorious defense to the action—who, indeed, may be able to show an impregnable title to the land in dispute—would not be able to alienate or transfer the property during the pendency of the action, for no one would purchase property the title to which thus stands challenged. The defendant would not, under such a condition as to the title to his property, enjoy that unrestricted dominion over the property which would enable him to do with it as he pleased. Indeed, the effect of the pendency of such an action, in almost all instances, would probably be to prevent the permanent improvement of the property and the full use of it for the purposes to which it may be peculiarly adapted, and the policy of the state is, of course, that its public lands shall be disposed of to private individuals so that they may be utilized to the highest advantage to which they can be put and thereby enhance the general welfare of the citizens and consequently the general prosperity of the state.

We do not believe that the legislature intended that any such situation should arise with respect to litigation inaugurated by the state for the purpose of determining whether title to its lands has been legally acquired by those who have at least a color of title to such lands or a paper title upon its face perfectly valid. In this immediate connection, we may appropriately consider for a moment the asseveration of the attorney-general that ''it was not the purpose or

intention of the legislature, in adopting it (sec. 581a), that it should bind the state.''

It will be observed that the section is in such sweeping language as to admit of no other construction than that the legislature intended not to except from its operation any litigant or any action by whomsoever commenced. It reads: *''No action* heretofore or hereafter commenced shall be further prosecuted,'' etc. This means, of course, that *all* actions, regardless of who the party plaintiff may be, shall not be further prosecuted, etc. If the question as to the legislative intent were important in the solution of the problem herein submitted, we are prepared to say that our construction of the section for the purpose of ascertaining that intent would lead us to the reverse position of the attorney-general upon that proposition. The state has, through its legislature, bound itself in express language to the terms of many of the provisions of our statute of limitations, and it is proper and, indeed, a cardinal rule of statutory construction, that a particular provision of a statute which may be in ambiguous phraseology should, to get at its purpose and intent, be read and considered in the light, not only of other provisions of legislative enactments upon the same subject, but in view of the legislative policy affecting the subject as established by the statutory law generally. Thus viewing the section, the conclusion would seem to be reasonable, if not irresistible, that had the legislature intended that the state should be exempt from the operation of its terms, there would have been incorporated into the section express language or words to that effect. [3] To be more explicit, we thus formulate the proposition now in our minds: That, where the legislature has established a particular policy with respect to a particular subject of legislative cognizance, which policy is in derogation of that of the rule of the common law, all the law or sections of the code bearing upon or pertaining to that particular subject should be read and considered together, or as a whole, or by the light of each other, if the language of any one section or part of the law is so dubious or uncertain as to render its meaning or the legislative intent at the bottom of it lacking in clearness and certainty. Of course, the proposition here suggested merely goes to the question of the intention of the legislature and would be

wholly without force or merit if the state were not in any case made by express legislative mandate subject to or bound by the statute of limitations. But, in considering the nature or purpose of a statute such as the one with which we are here dealing, the question of the intention of the legislature in enacting it is not controlling or, indeed, of very great importance. The legal nature of the condition or restriction prescribed by the statute as affecting the primary right or the remedy to enforce such right is the all-controlling factor in determining the legal nature of the disabilities which the statute imposes upon litigants. We, therefore, fall back and wholly rely upon the proposition first above declared, that the section merely involves a matter of procedure as to the conduct of an action after it has been commenced.

[4] That the state, when it voluntarily becomes a suitor in its courts and so brings an action for relief of any character, is subject to or bound by the same rules of procedure or practice as to the prosecution of such actions as govern and apply to litigants suing in their individual capacities, is well settled.

In *Commonwealth etc.* v. *Helm*, 163 Ky. 69, [173 S. W. 389, 392], it is said: "It may be confidently affirmed that when the commonwealth comes into court to prosecute a suit it occupies, in the absence of some controlling statute on the subject, the attitude of any other litigant, and is subject to the same rules of practice and procedure." (See, also, *Moore* v. *Tate*, 87 Tenn. 725, [10 Am. St. Rep. 712, 715, 11 S. W. 935]; *State* v. *Holgate*, 107 Minn. 71, [119 N. W. 792, 793; *Port Royal etc. Co.* v. *South Carolina*, 60 Fed. 552, 553; *State* v. *Zanco's Heirs*, 18 Tex. Civ. App. 127, [44 S. W. 527, 529]; *State* v. *Pickney*, 22 S. C. 484, 488; *State* v. *Pacific Guano Co.*, 22 S. C. 50, 74.)

In *State ex rel. Attorney-General* v. *Board of Commrs.*, 101 Ind. 69, 74, it is said: "Not having taken an appeal from either of the former adjudications of its claims within the time limited by law, the state of Indiana, like any other claimant, must be held, we think, to be concluded, and bound by such former judgments. When the state becomes a suitor in any of the courts, it is as much bound by the laws of the land, by the rules of pleading and practice, and by the de-

cisions and judgments of the courts, inferior or superior, as any other suitor.''

The supreme court of the United States, in *Louisiana* v. *Jumel,* 107 U. S. 728, [27 ·L. Ed. 448, 2 Sup. Ct. Rep. 128, see, also, Rose's U. S. Notes], stated the principle as follows: ''When a state submits itself, without reservation, to the jurisdiction of a court in a particular case, that jurisdiction may be used to give full effect to what the state has by its act of submission allowed to be done.''

While expressing no definite opinion on the question, the appellate court of the first district, in *Anderson* v. *Nawa,* 25 Cal. App. 151, 157, [143 Pac. 555], seemed to be in very much doubt as to the soundness of the contention in that case that the section in question does not apply as well to the state as to other suitors. Note the language of the opinion therein: ''It is insisted that the action was instituted by the plaintiff upon behalf of the state in its sovereign capacity and that inasmuch as laches as a matter of law cannot ordinarily be imputed to the state, the motion to dismiss should have been denied for that reason alone. We are not prepared to say that the general rule in this behalf would operate to excuse an unreasonable delay in the service of summons in an action instituted by the state in its sovereign capacity for the purpose of asserting a public right or protecting a public interest; but we are satisfied that the present action does not involve in the slightest degree any such capacity, right or interest.''

The supreme court denied a hearing in that case without comment.

In his reply brief the attorney-general declares: ''The question in this case is not, as announced by respondent, whether the state may proclaim that rules of procedure do not apply to it, but rather the question before this court is: Can the state be held liable for the negligence of its agents, because those agents failed to comply with rules of procedure relating to the time within which acts must be done?'' But, as has already been indicated herein, the real question here is not whether the state may be bound by the negligence of its agents, but whether the state, having commenced an action to enforce a claimed right against a citizen, may unreasonably postpone bringing it to issue and a final disposition according to the procedure prescribed by the law.

48 Cal. App.—6

[5] Of course, every litigant who has committed his case to the care of a lawyer must suffer from the negligence or default of his attorney in complying with procedural rules required to be observed to preserve the rights of parties in actions pending before the courts, and the negligence of an attorney in the management of a case in court whereby his client suffers some loss or injury is imputable to the client himself, since the legal relation existing between client and attorney is that of a principal and agent. No less is true of the legal relationship existing between the state and its attorney, and, while it may be that there is negligence involved in the omission of the state's attorney to proceed with the prosecution of this case according to the diligence or requirements pointed out by the statute in question, we can see no less reason for holding that such negligence or default is not to be imputed to the state itself than that similar negligence or default by an attorney representing a private suitor in a pending action should not be imputed to the latter. But be that as it may, the simple question here is, as stated, whether the state is or is not bound by a matter of procedure or practice in the conduct of litigation instituted by it after it has commenced an action in court to enforce some right, and, as above indicated, our conclusion is that it is.

The attorney-general, in support of his position on this appeal, cites a large number of cases, of which we need name the following only: *Vrooman* v. *Li Po Tai,* 113 Cal. 303, 306, [45 Pac. 470] ; *White* v. *Superior Court,* 126 Cal. 245, [58 Pac. 450] ; *Russ & Sons* v. *Crichton,* 117 Cal. 695, [49 Pac. 1043] ; *People* v. *Melone,* 73 Cal. 574, [15 Pac. 294] ; *Whitaker* v. *Tuolumne Co.,* 96 Cal. 100, [30 Pac. 1016] ; *Skelly* v. *School Dist.,* 103 Cal. 652, [30 Pac. 643].

We have found nothing in those cases which has led us from the conclusion above indicated. None of the cases named is directly in point here nor is any such claim made by the attorney-general. Most of them merely declare the following rules: That there is no presumption that the state is barred, and, therefore, that the *statute of limitations* must be construed, if possible, so as not to apply to the state; that the state is not bound by a statute of limitations unless there are words in the statute or some other statute clearly making the state subject to the limitations prescribed by

the statute; that the state is not bound by general words of a statute which would operate to establish a right of action against it; that "the state is not bound by general words in the Political Code upon the subject of taxation, which would operate to trench upon its sovereign rights, injuriously affect its capacity to perform its functions, or establish a right of action against it." (*Reclamation Dist. No. 55* v. *County of Sacramento,* 134 Cal. 477, [66 Pac. 668].) The principles thus stated are well established and have never been gainsaid; but they have no application to the present case, either directly or by analogy. As we have above tried to show, we are here dealing, not with a statute of limitations in the strict legal sense in which such a statute is juridically understood, but with a statute whose main or central object is to require all litigants, after commencing actions against others to establish judicially some right to which they claim to be entitled as against those they have proceeded against, to press the actions to issue and trial with reasonable and proper diligence, and this because it is in the interest of justice to do so.

We conclude that the order appealed from should be affirmed, and it is so ordered.

Burnett, J., and Nicol, P. J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 2, 1920.

All the Justices concurred, except Sloane, J., who was absent.