ANDERSON, CLAYTON & COMPANY ET AL. V. STATE OF TEXAS
EX REL JAMES V. ALLRED, ATTORNEY GENERAL.

No. 6424.   Decided June 24, 1933.
(62 S. W., 2d Series, 107.)

*Fulbright, Crooker & Freeman, W. B. Bates* and *Leon Jaworski,* all of Houston, and *Johns, McCampbell & Snyder,* all of Corpus Christi, for appellants.

On the question of the right of the District Court of Nueces County to entertain jurisdiction over the defendants named in the cross-bill of cross-petitioners. R. S., 1925, art. 4656; International & G. N. Ry. v. Anderson County, 150 S. W., 239; Id., 106 Texas, 60, 156 S. W., 499; National Bank of Hopewell v. Marshall (Civ. App.), 2 S. W. (2d) 471; Seymour v. Montgomery (Civ. App.), 209 S. W., 237; City of Dallas v. Wright, 120 Texas, 190, 36 S. W. (2d) 973.

On question of whether cross-petitioners have such property rights as would authorize a court of equity to entertain jurisdiction of matters alleged in cross-bill. Truax v. Corrigan, 257 U. S., 312; Liggett & Co. v. Baldridge, 278 U. S., 105; International News Service v. Associated Press, 248 U. S., 215.

*James V. Allred,* Attorney General, *T. S. Christopher* and *Neal Powers,* Assistants Attorney General, and *E. H. Crenshaw, Jr.,* of Kingsville, *John C. North,* of Corpus Christi, *J. H. Tallichet,* of Houston, for appellees.

On proposition that district court did not have jurisdiction of appellees: Asphalt Belt R. R. Co. v. Uvalde Rock Asphalt Co. (Civ. App.), 256 S. W., 675; Dockson v. Waples-Platter Co. (Civ. App.), 45 S. W. (2d) 428; Box v. Oliver (Civ. App.), 43 S. W. (2d) 979.

MR. JUDGE SHARP delivered the opinion of the Commission of Appeals, Section A.

This case is before the Supreme Court upon certified questions from the Honorable Court of Civil Appeals of the Seventh District.

The pertinent facts are, that on August 12, 1932, the State of Texas on the relation of James V. Allred, Attorney General, and James V. Allred as Attorney General, plaintiffs, made application to the District Court of Nueces County to secure a

temporary injunction against M. D. Anderson, W. L. Clayton, Benjamin Clayton and Lamar Fleming, Jr., doing business under the name of Anderson, Clayton & Co., and others, to restrain them and their employees from violating the provisions of Chapter 277, Acts of the 42nd Legislature, known as House Bill 335, by operating and causing to be operated and from aiding and abetting the operation of trucks over the highways of Texas for transporting property for compensation or hire without obtaining permits from the State Railroad Commission.

Plaintiffs prayed for recovery of penalties described in said Act aggregating $3,000 as to each defendant and further prayed for a perpetuation of the injunction upon final hearing. On August 27, 1932, the application on the part of the State for temporary injunction was heard by the court, at which time it was announced to the court by plaintiffs' attorneys that they were willing for the application for temporary injunction to be denied and on this announcement the court entered its order denying the relief sought by plaintiffs. Notwithstanding the denial of the temporary injunction, arrests, prosecutions and threats of arrests of Anderson, Clayton & Co.'s drivers continued and on September 10, 1932, pursuant to a cross-bill filed by them, the court entered a restraining order enjoining the three members of the Railroad Commission, Mark Marshall, the Director of the Transportation Division, and L. G. Phares, Chief of the Highway Control, from further arresting, prosecuting and threatening to arrest the drivers of the motor vehicles. It further appears that on September 19, 1932, plaintiffs' suit came on for hearing on the matter of permanent injunction and on this date the defendants in said suit filed their third amended original answer and cross-bill and on the same date plaintiffs took a non-suit and in the cross-petition filed by the defendants it was alleged that they, as actors, were complaining of the original plaintiffs as set out in the original petition as being the State of Texas, by and on the relation of James V. Allred, Attorney General of the State of Texas, and James V. Allred as Attorney General of the State of Texas, and particularly of C. V. Terrell, Lon Smith, E. O. Thompson, comprising the Railroad Commission, Mark Marshall, Director of Motor Transportation, and L. G. Phares, Chief of the Highway Control, as agents and representatives of the State. In the cross-bill it is alleged that said officers were acting in excess of their authority and unlawfully and cross-petitioners sought an order enjoining such officers from interfering with the operation of trucks over the highways for the transportation of their property by

such cross-petitioners. They denied the violation of any law and alleged that they were operating the trucks by virtue of lease contracts with the owners thereof and set out in detail the manner and method employed by them in the use of such trucks for the transportation of their property.

After the filing of the third amended answer and cross-bill by the defendants and after the State had taken a non-suit, the attention of the court was called to the cross-bill and that they would insist upon prosecuting the same. The court on the same date entered an order continuing in effect the temporary restraining order theretofore issued pursuant to defendants' cross-bill pending hearing thereon on the 25th day of October, 1932. The cross-bill came on for hearing on application for temporary injunction on October 25, 1932, at which time all of the cross-defendants named in the cross-bill filed a plea to the jurisdiction of the court because the cross-petition disclosed that the cross-petitioners were seeking an injunction against the enforcement of a penal statute of the State and showed no vested or property rights in cross-petitioners which could be protected by a court of equity.

Subject to the plea of jurisdiction, Mark Marshall and all others named in the cross-action answered by general demurrer, special exceptions, general denial, admitted their official positions, alleged their duties, their good faith in the performance thereof, the violation of the statute by cross-petitioners and attacked as a subterfuge the lease contracts and their insufficiency as a justification for the operation of trucks or as a defense to the provisions of the penal statutes.

We quote from the certificate as follows:

"The agreed statement of facts is to the effect that M. D. Anderson, W. L. Clayton, Benjamin Clayton and Lamar Fleming, Jr., are doing business under the style of Anderson, Clayton & Company and are engaged in buying and selling cotton which they export from ports in the State of Texas to various foreign countries. That in connection with their business it is necessary for them to buy large quantities of cotton at interior points in the State and transport it to port cities. That in the transportation thereof some of it is transported over the Texas highways in vehicles owned by Anderson, Clayton & Company. That said vehicles are inadequate for their transportation needs and in order to cope with such inadequacy they entered into separate written lease contracts with different individuals who own approximately fifty motor vehicles equipped and designed to transport cotton. That the terms of such leases were uni-

form, except as to the length of the term which in most instances was for a period of one week to one month. That in each instance the following form of lease agreement was entered into between the owners of said trucks and Anderson, Clayton & Company:

" 'THE STATE OF TEXAS )
COUNTY OF HARRIS )

" 'THIS MEMORANDUM OF AN AGREEMENT is made and entered into by and between ———hereinafter called lessor, and Anderson, Clayton & Co., of Houston, Texas, ———hereinafter called lessees.

" 'Lessor has and does by these presents lease and let to lessees —— motor trucks fully described by engine number, State License number, manufacturer, and capacity, on the back hereof, for a period of —— week(s) beginning with the ——— day of ——— 1932, and ending on the —— day of ——— 1932, both inclusive, subject to the following terms and conditions:

" 'The aforesaid trucks are being leased primarily for transportation of cotton from the interior to Houston or other port cities; and bagging, ties or other commodities from Houston and other port cities to the interior. Lessees agree to pay lessor as rental for each of said trucks the sum of $—— dollars per week, plus an additional sum equal to ——¢ per ton mile, for all commodities transported from Houston and other port cities to the interior, respectively on each of said trucks during such lease period.

" 'Lessor represents that said motor trucks are in first class condition and in every respect suitable for the transportation of cotton; that each and all of said trucks have been duly licensed and are so constructed and equipped as to comply with all the rules and regulations governing their operation over the highways of this State carrying net loads of the respective amounts as represented on the back hereof. Any repairs necessary to keep the said trucks in good running condition throughout the life of this lease shall be at the expense of lessor; and in the event that the operation of any truck should be suspended for purposes of necessary repairs during the life of the lease, such loss of time shall be considered to be for the account of lessor and the life of the lease shall be extended, without additional rental payment, for a corresponding period in order to compensate lessees for such loss of time.

" 'Lessees, during the term of this lease, are to have absolute control and use of said motor trucks in the same manner as though they were the absolute owners thereof. Lessees will

employ and have absolute control and supervision of the operators of said trucks, however, lessees agree not to permit any persons to whom lessor objects in writing as not being careful and competent drivers to operate any of said trucks, if on investigation the lessees find such objections well founded. On the other hand lessor agrees to waive any claim and relinquish and release lessees from any liability for any injury or damage occasioned to said trucks during the term of this lease, whether caused by negligence of the driver or otherwise.

" 'Lessor agrees, at his expense, to carry fire, theft and accident insurance to protect himself against loss and injury to said trucks.

" 'Lessor also agrees, at his expense, to carry public liability insurance with proper rider or omnibus clause so as to fully protect lessees in the amount of $5,000.00 (five thousand dollars) for death or injury to one person and $10,000.00 (ten thousand dollars) for death or injury to two or more persons growing out of the same accident, and in amount of at least $1,000 (one thousand dollars) for property damage. This insurance must be carried in a company authorized to do business in this State and to be in all respects both as to company and form of policy, acceptable to lessees.

---------------------------------------------
Lessor

---------------------------------------------
Lessee.

--------------------------
Date.'

"The said written lease represents the complete agreement between the respective owners and Anderson, Clayton & Company and no verbal arrangements or side agreements of any character were made by said parties. That the conditions of the lease were strictly performed; the trucks used exclusively for the purpose of transporting cotton owned by Anderson, Clayton & Company and for no other purpose. That the consideration paid the owners of the trucks is in each instance agreed upon at the time the lease is executed and is $25.00 per week. That there is no agreement relative to the number of trips a truck will make and the lump sum consideration includes any and every kind of use made of said truck.

"That Anderson, Clayton & Company has approximately twenty drivers of leased trucks who have been arrested in various parts of the State charged with the operation of trucks upon state highways without first obtaining a permit from the

Railroad Commission as provided in what is known as House Bill 335. That numerous other drivers have been threatened with arrest and prosecution, a number have been placed in jail where they were detained for a period of time in excess of twenty-four hours and were threatened with re-arrest on each occasion any of them should be found driving such trucks for Anderson, Clayton & Company.

"That if Anderson, Clayton & Company are within their legal rights in operating said trucks under the lease agreements, they have suffered and sustained and will continue to suffer and sustain irreparable injury and damage by reason of the arrest, threats of arrest and prosecutions that have been made and instituted by the cross defendants.

"The cause came on regularly to be heard on October 25th and judgment was rendered dissolving the temporary restraining order theretofore granted cross petitioners and denying them the relief sought, but the order dissolving such temporary writ was stayed pending a disposition of the case on appeal, and from this decree cross petitioners have appealed.

"In view of the law questions presented, we deem it advisable to certify to your Honorable Court the following:

"1. Did the District Court of Nueces County acquire jurisdiction over the defendants named in the cross-bill of cross-petitioners?

"2. Did cross-petitioners have such property rights as would authorize a court of equity to entertain jurisdiction of the matters alleged in the cross-bill?

"3. Were cross-petitioners operating the leased trucks for compensation or hire under the provisions of Chapter 277, Acts of the 42nd Legislature, known as House Bill 335?"

It will be observed that the State invoked the jurisdiction of the District Court of Nueces County to sue the defendants for certain penalties and to restrain them and their employees from violating the provisions of House Bill 335, above described, by operating or causing to be operated and from aiding and abetting the operation of trucks over the highways of this State for transporting property for compensation or hire without obtaining a permit from the Railroad Commission. Defendants answered and the case came on for trial and the State announced that it was willing that the temporary injunction sought be denied and judgment to that effect was entered. The defendants amended their answer and cross-bill and upon this answer and cross-bill the court granted them a restraining order against the plaintiffs and others named therein. Again,

on September 19th, defendants amended their cross-petition and on this date the State took a non-suit and in the cross-petition it was alleged that the agents of the State were acting unlawfully and in excess of their authority and sought an order enjoining such officers from interfering with the operating of the trucks over the highways for the transportation of their property. They denied the violation of any law and set out the lease contracts and other facts incident thereto.

On October 25th the officers named in the cross-petition filed a plea to the jurisdiction of the court upon the ground that the cross-petitioners were seeking an injunction against the enforcement of a penal statute and showed no vested or property rights which could be protected by a court of equity. The question of venue was not raised in the answer filed by the agents of the State. The issue was sharply drawn as to whether or not the vehicles operated by defendants were subject to the provisions of the Act above described.

■ It long has been the public policy that a state may not be sued without its consent. Prout v. Starr, 188 U. S., 537, 47 Law Ed., 584, 23 Sup. Ct. Rep., 398; Gunter v. Atlantic Coast Line Railroad Co., 200 U. S., 273, 50 Law Ed., 477; Stephens v. Texas & P. Ry. Co., 100 Texas, 177; State v. Zanco's Heirs, 18 Texas Civ. App., 127, 44 S. W., 527 (writ denied); 25 R. C. L., sec. 49, p. 412. The authorities sustain the exception to the foregoing rule that the State's immunity from suit does not extend to a suit against state officers to enjoin the enforcement of an invalid law to the injury of the legal rights of a citizen. 25 R. C. L., sec. 51, pp. 414 and 415, and authorities cited in foot notes.

■ But the authorities sustain the further rule that where a state voluntarily files a suit and submits its rights for judicial determination it will be bound thereby and the defense will be entitled to plead and prove all matters properly defensive. This includes the right to make any defense by answer or cross-complaint germane to the matter in controversy. Gunter v. Atlantic Coast Line Railroad Co., supra; Clark v. Barnard, 108 U. S., 436; State v. Kilburn, 81 Conn., 9, 69 Atl., 1028; State v. Zanco's Heirs, supra (writ of error denied); 25 R. C. L., sec. 46, p. 411.

■ The State having invoked the jurisdiction of the District Court of Nueces County, a court of competent jurisdiction, for a judicial determination of the question as to whether the defendants were subject to the provisions of the foregoing Act

and liable for the penalties described therein, it became subject to the same rules as other litigants, except in so far as such rules may be modified in favor of the State by statute or may be inapplicable or unenforceable because of exemptions inherent in sovereignty. State v. Snyder, 66 Texas, 700, 18 S. W., 106; State v. Houston National Bank et al. (Civ. App.), 259 S. W., 175 (writ of error denied). The agents of the State cited to appear and answer the cross-bill did not file a plea of privilege to be sued elsewhere than in Nueces County. The venue statute is one of personal privilege, and can be and was waived by the voluntary appearance of the parties in answering, in a court of competent jurisdiction, the cross-bill, as was done here. De La Vega v. League, 64 Texas, 214; H. H. Watson Co. v. Cobb Grain Co. (Com. App.), 292 S. W., 174; Galveston, H. & S. A. Ry. Co. v. Baumgarten, 31 Texas Civ. App., 253, 72 S. W., 78. That court at the instance of the State acquired jurisdiction of the parties and subject-matter in controversy and the defendants having sought affirmative relief in a cross-bill, the jurisdiction of the court cannot afterwards be defeated by the State upon a plea that the cross-petitioners were seeking an injunction against the enforcement of a penal statute. Bailey v. Federal Supply Co. (Texas Com. App.), 287 S. W., 1090; De La Vega v. League, supra.

Question No. 1 should be answered in the affirmative.

The second question involves the construction of certain parts of House Bill 335. This Act is long and it is unnecessary to undertake a discussion of its many provisions. The pertinent parts involved here read as follows:

"Section 1. * * * (e) The term 'certificate' means certificate of public convenience and necessity issued under this act.

"(f) The term 'permit' means the permit issued to contract carriers under the terms of this act.

"(g) The term 'motor carrier' means any person, firm, corporation, company, copartnership, association or joint stock association, and their lessees, receivers or trustees appointed by any court whatsoever owning, controlling, managing, operating or causing to be operated any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this State, where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed; * * *

"(h) The term 'contract carrier' means any motor carrier as hereinabove defined transporting property for compensation

or hire over any highway in this State other than as a common carrier.

"Sec. 2. No motor carrier, as defined in the preceding section, shall operate any motor-propelled vehicle for the purpose of transportation or carriage of property for compensation or hire over any public highway in the State except in accordance with the provisions of this act. * * *

"Sec. 3. No motor carrier shall, after this act goes into effect, operate as a common carrier without first having obtained, from the Commission, under the provisions of this act, a certificate of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity requires such operation. No motor carrier shall, after this act goes into effect, operate as a contract carrier without first having obtained from the Commission a permit so to do, which permit shall not be issued until the applicant shall have in all things complied with the requirements of this Act.

"Sec. 4. (a) The Commission is hereby vested with power and authority and it is hereby made its duty to supervise and regulate the transportation of property for compensation or hire by motor vehicle on any public highway in this State, * * *

"Sec. 5. No other carrier shall hereafter operate as a common carrier for the transportation of property for compensation or hire over the public highways of this State without first having obtained from the Commission, under the provisions of this act, a certificate declaring that the public convenience and necessity requires such operation. * * *

"Sec. 6. (a) No motor carrier now operating as a contract carrier or that may hereafter desire to engage in the business of a contract carrier shall so operate until it shall have received a permit from the Commission to engage in such business and such permit shall not be issued until the applicant shall have in all things complied with the requirements of this act; nor shall such permit be issued unless the character of business being done or to be done by the applicant strictly conforms with the definition of a contract carrier. * * *"

Anderson, Clayton & Company claim that they were transporting their own cotton in their own trucks as well as in other trucks leased by them for that purpose over the highways of this State and were not transporting same as a common carrier or contract carrier for hire or compensation. The facts show that Anderson, Clayton & Company are engaged in buying and selling cotton on a large scale which they export from ports in Texas to various foreign countries. That it is necessary to buy

large quantities of cotton at interior points and transport it to port cities. That for this purpose the cotton is transported in vehicles owned by them and also in some vehicles leased for that purpose.

■ The foregoing Act makes no distinction between intrastate and interstate carriers. All persons who operate or cause to be operated any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this State where in the course of such transportation a highway between two or more incorporated cities, towns or villages is traversed, must obtain a certificate of public convenience and necessity. The Act also provides that a "contract carrier" transporting property for compensation or hire over any highway in this State other than as a common carrier must obtain a permit from the Railroad Commission. That part of the Act which requires vehicles engaged wholly in interstate commerce to obtain a certificate of public convenience and necessity is void. Galveston Truck Line Corporation v. Allen et al., 2 Fed. Supp., 488, decree affirmed by the Supreme Court of United States, 77 L. Ed., 1005, upon the following authorities: Texas New Orleans R. Co. v. Sabine Tram. Co., 227 U. S., 111; Baltimore & Ohio S. W. R. Co. v. Settle, 260 U. S., 166, 170, 173, 174; United States v. Erie R. Co., 280 U. S., 98, 101, 102; Buck v. Kuykendall, 267 U. S., 307, 315, 316; Bush Co. v. Maloy, 267 U. S., 317, 324, 325; Sprout v. South Bend, 277 U. S., 163, 169-171; Bradley v. Public Utilities Comm., 289 U. S., 92, 77 L. Ed., 746.

The Legislature has found it difficult to draw a valid law regulating the operation of vehicles upon the highways of this State. The 42nd Legislature, in passing House Bill 335, also passed other laws. It passed House Bill 628 (Acts 42nd Legislature, 1931, c. 121, Vernon's Ann. P. C., art. 827), and this Act was held invalid in part. See McLeaish & Co. v. Binford (D. C.), 52 Fed. (2d) 151, affirmed by the U. S. Supreme Court Jan. 25, 1932, 284 U. S., 598, 52 S. Ct., 207, 76 Law Ed., 513. Likewise, the same Legislature passed House Bill No. 336, regulating vehicles on highways (Acts 42nd Leg., 1931, c. 282, Vernon's Ann. P. C., art. 827a, sec. 1, et seq.). See Sproles v. Binford, 286 U. S., 374, 52 Sup. Ct. Rep., 581, 76 Law Ed., 1167.

As above shown, some provisions of House Bill 335 have been declared invalid. That part of the statute pertaining to contract carriers other than common carriers, as applied to interstate commerce, has never been passed upon by the Su-

preme Court of the United States nor by the Supreme Court of this State. The case of Stephenson et al. v. Binford et al., 287 U. S., 251, 77 Law Ed., 203, involved the construction of this part of the Act as applied to contract carriers engaged in intrastate commerce for compensation or hire requiring them to obtain a permit from the Railroad Commission and the law was sustained. We refer to that opinion for an exhaustive statement and review of this Act. Whether or not the vehicles involved here were engaged in intrastate or interstate commerce was a question of fact to be determined, unless the evidence established that fact as a matter of law.

But brushing aside the question of intrastate or interstate commerce, the further issue was presented to the trial court as to whether or not, under the facts stated, the trucks in controversy came under the definition of contract carriers for compensation or hire and therefore subject to the provisions of this Act. The trial court had these questions for decision and in the exercise of its jurisdiction issued an injunction to protect the interests of the litigants during the pendency of the cause. The controlling question presented here is, was the trial court authorized in the exercise of that jurisdiction?

■ The foremost reason pressed here in favor of the contention that the defendants were not entitled to an injunction against the officers of the State, is in effect that it is an effort on their part to defeat the enforcement of a penal statute by injunctive proceedings. Subject to certain fixed exceptions, the rule that injunctive proceedings will not be permitted to stay the enforcement of penal statutes is established beyond cavil. For a full discussion of this question, we refer to the recent cases of Ex parte Sterling, 122 Texas, 108, 53 S. W. (2d) 294, and Ex parte Phares, 122 Texas, 104, 53 S. W. (2d) 297. In those cases the owners of trucks undertook by injunctive proceedings to stop criminal prosecution under a statute upheld by the Supreme Court of the United States in the case of Sproles v. Binford, supra. It was undisputed that they were carriers for hire operating on the highways of this State, transporting loads of excessive weight, condemned by law, and that they were subject to prosecution for violating the plain provisions of this Act. The court correctly held that resort could not be had to courts to stop criminal proceedings by an injunction.

But that is not the case before us. The State contended in this case that the trucks owned and operated by Anderson, Clayton & Co., in transporting its own property and those leased by it from others, under the facts above stated, came un-

der the provisions of the law. On the other hand, Anderson, Clayton & Co. and others contend that they were not subject to the provisions of this Act. To test this very issue, the State filed suit in the District Court of Nueces County to collect penalties under the provisions of this Act and at the same time sought injunctive proceedings against those operating the trucks in controversy. The defendants met this issue by answer and cross-bill and the State abandoned its demand for an injunction, and later took a non-suit. While these proceedings were pending, the agents of the State filed complaints in the courts and had approximately 20 drivers of these trucks arrested in various parts of the State charged with the operation of trucks upon state highways without first obtaining a permit from the Railroad Commission as provided for in this Act. It is admitted that numerous other drivers have been threatened with arrest and prosecution, a number have been placed in jail and threatened with re-arrest if any of them should be found driving such trucks for Anderson, Clayton & Co. It is also stipulated that if Anderson, Clayton & Co. are within their rights in operating the trucks under the lease agreements, they have suffered and sustain and will continue to suffer and sustain irreparable injury by reason of the arrest and threatened arrest of the truck drivers by the agents of the State.

■ The foregoing statement reflects the nature of the business conducted by Anderson, Clayton & Co. and to carry on that business they found it advisable to lease certain trucks to carry cotton from the interior points to the port cities. It is well settled that the handling of cotton is a business and classed as a property right. See Duplex Printing Press Co. v. Deering, 254 U. S., 443, 65 L. Ed., 349; Truax v. Corrigan, 257 U. S., 312; Liggett Co. v. Baldridge, 278 U. S., 105; Dorchy v. Kansas, 272 U. S., 306; International News Service v. Associated Press, 248 U. S., 215; King v. Weiss & Lesh Mfg Co., 266 Fed. Rep., 257.

In the case of International News Service v. Associated Press, supra, it was held:

"In order to sustain the jurisdiction of equity over the controversy, we need not affirm any general and absolute property in the news as such. The rule that a Court of Equity concerns itself in the protection of property rights treats any civil right of a pecuniary nature as a property right (Re Sawyer, 124 U. S., 200, 210; Re Debs, 158 U. S., 564; 593); and the right to acquire property by honest labor or the conduct of a lawful

business is as much entitled to protection as the right to guard property already acquired." (Citing authorities).

■ This case involves another well settled rule which clearly distinguishes it from the Sterling and Phares cases, supra, and that is where a party to a pending suit in equity commences a criminal proceeding, under these circumstances, the criminal proceedings may be enjoined, if they are brought to enforce the same right that is in issue before the court. Packard v. Banton, 264 U. S., 140, 68 L. Ed., 596, 14 R. C. L., sec. 131, 32 C. J., p. 284, sec. 449; Philadelphia Co. v. Stimson, 223 U. S., 605; Royal Baking Powder Co. v. Emerson, 270 Fed., 429; Wichita Falls Traction Co. v. Raley, 17 S. W. (2d) 157; Ashcraft v. Healey, 23 Fed. (2d) 189; Warren v. Gau, 18 S. W. (2d) 768; City of Atlanta v. Gate City Gaslight Co., 71 Ga., 106; Zweigart v. Chesapeake & O. Ry. Co., 161 Ky., 463, 170 S. W., 1194.

In the case of Philadelphia Co. v. Stimson, supra, Mr. Justice Hughes, in rendering the opinion for the court, discussed the powers of a court of equity to restrain against proceedings for the punishment of offenses, and held:

"* * * But a distinction obtains when it is found to be essential to the protection of the property rights, as to which the jurisdiction of a court of equity has been invoked, that it should restrain the defendant from instituting criminal actions involving the same legal questions."

In the further course of the opinion it was said:

"* * * And a similar injury may be inflicted, and there may exist ground for equitable relief, when an officer, insisting that he has the warrant of the statute, is transcending its bounds, and thus unlawfully assuming to exercise the power of government against the individual owner, is guilty of an invasion of private property."

In the case of Packard v. Banton, supra, the United States Supreme Court, in rendering the opinion in that case, said:

"The general rule undoubtedly is that a court of equity is without jurisdiction to restrain criminal proceedings unless they are instituted by a party to a suit already pending before it, to try the same right that is in issue there. Re Sawyer, 124 U. S., 200, 209-11, 31 L. Ed., 402, 405, 406, 8 Sup. Ct. Rep., 486; Davis & F. Mfg. Co. v. Los Angeles, 189 U. S., 207, 217, 47 L. Ed., 778, 780, 23 Sup. Ct. Rep., 498."

In the case of Zweigart v. Chesapeake & O. Railway Company, supra, it was said:

"While ordinarily, of course, an injunction will not lie to

restrain criminal proceedings, yet where, as in this case, plaintiff's property right is involved, and it appears that there will be a multiplicity of suits, and irreparable injury will follow unless the prosecutions be enjoined, we conclude that a court of equity may properly interfere. Shinkle v. City of Covington, 83 Ky., 420. And where the facts are sufficient to justify the interference of a court of equity, the court will pass on all the questions that are necessarily involved." ·

In the case of the City of Dallas v. Wright, 120 Texas, 190, 36 S. W. (2d) 973, Chief Justice Cureton, in rendering· the opinion of the court and in discussing the powers of the court to issue injunctive proceedings to protect the rights of the parties involved, held:

"Injunctions in such suits will also issue to prevent a multiplicity of suits, or to prevent irreparable injury. 44 Corpus Juris, p. 750, secs. 3294, 3295, 3296; authorities post. . It is likewise elementary that a court, once having obtained jurisdiction of a cause of action as incidental to its general jurisdiction, may exercise any power, or grant any writ, including the writ of injunction, necessary to administer justice between the parties, preserve the subject-matter of the litigation, and make its judgment effective. 15 Corpus Juris, p. 810, sec. 108."

■ It is admitted that if the contention of the State with respect to the construction of this Act is wrong, that Anderson, Clayton & Co. have suffered, and will continue to suffer, irreparable injury to their business and property. To hold, in the face of this record, that the State could invoke the jurisdiction of a court to determine the issues involved in this suit, and during the pendency of the proceedings in that court could, by its agents, institute criminal proceedings in many instances against the defendants, as was done here, upon the very issue then pending in that court for determination, would be repugnant to the well settled rules announced in the foregoing opinions. It, therefore, logically follows that the trial court, in order to prevent, pending the determination of the issues involved, irreparable injury to the business and property of the cross-petitioners, had jurisdiction to issue injunctive proceedings, restraining the officers from having the truck drivers arrested until the questions before the court were finally determined.

We answer Question No. 2 in the affirmative.

■ The third question certified presents a question of fact and not of law. The Supreme Court's appellate jurisdiction does

not extend to fact questions, such as sufficiency of evidence to support the judgment, whether invoked by certified questions or application for writ of error. Owens v. Tedford, 114 Texas, 390, 269 S. W., 418.; McCullough v. McCullough, 120 Texas, 209, 36 S. W. (2d) 459. Therefore the Supreme Court is without jurisdiction to answer this question.

We recommend that the foregoing questions be answered as indicated.

The opinion of the Commission of Appeals answering the certified questions is adopted and ordered certified.

C. M. CURETON, Chief Justice.