IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 02-1031
════════════
 
Reata Construction 
Corporation, Petitioner,
 
v.
 
City of Dallas, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Fifth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued December 
12, 2004
 
 
Justice Johnson delivered the opinion 
of the Court, in which Chief Justice 
Jefferson, Justice Wainwright, Justice Medina, and Justice Green joined.
 
Justice Brister filed a concurrence in 
which Justice Hecht and Justice O’Neill joined.
Justice Willett did not participate in 
the decision.
 
We grant the 
City of Dallas’s motion for rehearing. We withdraw our opinion of April 2, 2004, 
and substitute the following in its place.
The issue in 
this case is whether the City of Dallas has governmental immunity from suit for 
claims by Reata Construction Corporation arising from the City’s alleged 
negligence. The court of appeals held that the City had immunity. We conclude 
that the City does not have immunity from suit as to Reata’s claims which are 
germane to, connected with, and properly defensive to the City’s claims, to the 
extent Reata’s claims offset those asserted by the City. We reverse the court of 
appeals’ judgment and remand the case to the trial court for further 
proceedings.
I. Background
The City of 
Dallas issued Dynamic Cable Construction Corporation, Inc., a temporary license 
to install fiber optic cable in Dallas. Dynamic subcontracted with Reata 
Construction Corporation to do the drilling for the project. Reata inadvertently 
drilled into a thirty‑inch water main, flooding a nearby building owned by 
Southwest Properties Group, Inc. Southwest sued Dynamic and Reata for 
negligence, and some tenants of the building intervened. Reata filed a 
third‑party claim against the City alleging that the City negligently 
misidentified the water main’s location. Before answering Reata’s third-party 
claim, the City intervened in the case, asserting negligence claims against 
Dynamic. A few weeks after intervening in the suit, the City answered Reata’s 
petition and filed special exceptions asserting that Reata’s claims were not 
within the Texas Tort Claims Act’s waiver of immunity. See Tex. Civ. Prac. & Rem. Code § 
101.021. The City subsequently filed an amended plea in intervention 
asserting claims of negligence against Reata and a plea to the jurisdiction 
asserting governmental immunity from suit. Reata filed a response claiming that 
(1) governmental immunity did not apply because the City subjected itself to the 
trial court’s jurisdiction by intervening in the lawsuit and seeking affirmative 
relief; (2) the Dallas City Charter and section 51.075 of the Texas Local 
Government Code contain express waivers of governmental immunity because they 
provide, respectively, that the City may “sue or be sued” and “plead and be 
impleaded”; (3) under the common law, the City could not assert governmental 
immunity for its actions in failing to properly identify the water main’s 
location prior to 1970 because water services were considered a proprietary 
function; and (4) even if the Texas Tort Claims Act applied, Reata’s claim fell 
within the Act’s waiver of immunity. The trial court denied the City’s plea to 
the jurisdiction, and the City took an interlocutory appeal. See Tex. Civ. Prac. & Rem. Code § 
51.014(a)(8).
Rejecting 
each of Reata’s asserted bases for a waiver of governmental immunity, the court 
of appeals reversed and dismissed Reata’s claims against the City. 83 S.W.3d 
400. The court of appeals held that even though the City intervened in the suit 
against Reata, by such action the City asserted its right to sue but did not 
waive its governmental immunity from suit. Id. at 398-400.
In 
Anderson, Clayton & Co. v. State ex rel. Allred, 62 S.W.2d 107, 110 
(Tex. 1933), we stated: “[W]here a state voluntarily files a suit and submits 
its rights for judicial determination it will be bound thereby and the defense 
will be entitled to plead and prove all matters properly defensive. This 
includes the right to make any defense by answer or cross-complaint germane to 
the matter in controversy.” But the court of appeals relied on other language in 
that opinion providing that the State, having invoked the jurisdiction of the 
district court, was “subject to the same rules as other litigants, except in so 
far as such rules may be modified in favor of the State by statute or may be 
inapplicable or unenforceable because of exemptions inherent in sovereignty.” 83 
S.W.3d at 399 (quoting Anderson, 62 S.W.2d at 110). The court of appeals 
concluded that when a governmental entity intervenes in a lawsuit, “sovereign 
immunity still forecloses suit against that governmental entity.” Id.
In this 
Court, Reata asserts (1) governmental immunity did not apply because the City 
subjected itself to the trial court’s jurisdiction by intervening in the lawsuit 
and seeking affirmative relief; (2) the Dallas City Charter and section 51.075 
of the Texas Local Government Code contain express waivers of governmental 
immunity because they provide, respectively, that the City may “sue or be sued” 
and “plead and be impleaded”; and (3) even if the Texas Tort Claims Act applied, 
Reata stated a claim within the Act’s waiver of immunity.
II. Sovereign Immunity
“Sovereign 
immunity protects the State from lawsuits for money damages.” Tex. Natural 
Res. Conservation Comm’n v. IT‑Davy, 74 S.W.3d 849, 853 (Tex. 2002). 
Political subdivisions of the state, including cities, are entitled to such 
immunity—referred to as governmental immunity—unless it has been waived.[1] See Wichita Falls 
State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3 (Tex. 2003). Sovereign 
immunity encompasses immunity from suit, which bars a suit unless the state has 
consented, and immunity from liability, which protects the state from judgments 
even if it has consented to the suit. Tex. Dep’t of Transp. v. Jones, 8 
S.W.3d 636, 638 (Tex. 1999). We have held that sovereign immunity from suit 
deprives a trial court of subject-matter jurisdiction. Tex. Dep’t of Parks 
& Wildlife v. Miranda, 133 S.W.3d 217, 224 (Tex. 2004); Jones, 8 
S.W.3d at 638.
Sovereign 
immunity is a common-law doctrine that initially developed without any 
legislative or constitutional enactment. See Cohens v. Virginia, 19 U.S. 
264, 293 (1821) (recognizing the doctrine without citing statutory or 
constitutional authority); Hosner v. De Young, 1 Tex. 764, 769 (1846) 
(same); see also Tex. A&M University-Kingsville v. Lawson, 87 S.W.3d 
518, 520 (Tex. 2002). We have consistently deferred to the Legislature to 
waive such immunity. See IT‑Davy, 74 S.W.3d at 854; 
Guillory v. Port of Houston Auth., 845 S.W.2d 812, 813 (Tex. 1993); 
Duhart v. State, 610 S.W.2d 740, 741 (Tex. 1980); Lowe v. Tex. Tech 
Univ., 540 S.W.2d 297, 298 (Tex. 1976). We have previously discussed the 
possibility that a governmental entity might waive its immunity by certain 
actions, even absent a legislative waiver of immunity. See Catalina Dev., 
Inc. v. County of El Paso, 121 S.W.3d 704, 705-06 (Tex. 2003). However, 
there is tension between the concept of a governmental entity waiving its 
immunity from suit by some action independent from the Legislature’s waiving 
immunity and the principle that only the Legislature can waive sovereign 
immunity. See IT-Davy, 74 S.W.3d at 853. There is also tension 
between the concept of a governmental entity waiving its immunity from suit and 
the principle that a court’s lack of subject- matter jurisdiction generally 
cannot be waived. See Fed. Underwriters Exch. v. Pugh, 174 S.W.2d 598, 
600 (Tex. 1943). Recognizing that sovereign immunity is a common-law doctrine, 
we have not foreclosed the possibility that the judiciary may modify or abrogate 
such immunity by modifying the common law. See Taylor, 106 S.W.3d at 
695-96; see also Tex. Dep’t of Criminal Justice v. Miller, 51 S.W.3d 583, 
593 (Tex. 2001) (Hecht, J., concurring) (noting that judicial abolition of 
immunity may be necessary to prompt the Legislature to enact a reasoned system 
for determining the government’s responsibility for its torts). Therefore, it 
remains the judiciary’s responsibility to define the boundaries of the 
common-law doctrine and to determine under what circumstances sovereign immunity 
exists in the first instance.
We have 
generally deferred to the Legislature to waive immunity because the Legislature 
is better suited to address the conflicting policy issues involved. See 
IT-Davy, 74 S.W.3d at 854. A lack of immunity may hamper governmental 
functions by requiring tax resources to be used for defending lawsuits and 
paying judgments rather than using those resources for their intended purposes. 
Id. The Legislature has expressed its desire to preserve its interest in 
managing fiscal matters through the appropriations process by maintaining 
sovereign immunity unless it has clearly and unambiguously stated otherwise. 
Tex. Gov’t Code § 311.034. The 
United States Supreme Court has also recognized that suits for money damages 
against states “may threaten the financial integrity of the States” and that “at 
the time of the founding, many of the States could have been forced into 
insolvency but for their immunity from private suits for money damages.” 
Alden v. Maine, 527 U.S. 706, 750 (1999). However, if the governmental 
entity interjects itself into or chooses to engage in litigation to assert 
affirmative claims for monetary damages, the entity will presumably have made a 
decision to expend resources to pay litigation costs. If the opposing party’s 
claims can operate only as an offset to reduce the government’s recovery, no tax 
resources will be called upon to pay a judgment, and the fiscal planning of the 
governmental entity should not be disrupted. Therefore, a determination that a 
governmental entity’s immunity from suit does not extend to a situation where 
the entity has filed suit is consistent with the policy issues involved with 
immunity. In this situation, we believe it would be fundamentally unfair to 
allow a governmental entity to assert affirmative claims against a party while 
claiming it had immunity as to the party’s claims against it. See Guar. Trust 
Co. v. United States, 304 U.S. 126, 134-35 (1938) (noting that the rule 
allowing claims against a foreign sovereign that has asserted its own claims is 
assumed to be founded on principles of justice); see also Cunningham v. 
Parkdale Bank, 660 S.W.2d 810, 813 (Tex. 1983) (stating that fundamental 
fairness requires parties to be heard on the merits of their cases).
III. Analysis
A. The City’s Claim for Relief
Although 
there may have been some question after Anderson regarding whether 
sovereign immunity continues to exist when an affirmative claim for relief is 
filed by a governmental entity, subsequent cases indicate that under such 
circumstances immunity from suit no longer completely exists for the 
governmental entity.[2] In State v. Humble Oil 
& Refining Co., 169 S.W.2d 707, 708 (Tex. 1943), we considered whether a 
defendant in a tax suit could assert an offset against the State for taxes it 
had previously overpaid. The court of appeals concluded that the rule announced 
in Anderson applied: the defendant was entitled to claim an offset for 
any matter dependent upon or connected with the State’s suit. Id. at 709. 
We stated that “[w]e have no fault to find with the rule of law announced in . . 
. Anderson . . . when applied in a proper case.” Id. However, we 
went on to hold that the Anderson rule did not apply in Humble Oil 
because (1) its application would abolish the rule that taxes due the State 
cannot be offset, and (2) the defendant’s claim was not connected with the 
State’s claim as the two involved taxes for different months and years. 
Id. at 710. While our opinion in Humble Oil did not specifically 
address the issue of whether the trial court had jurisdiction over Humble’s 
claims against the State, we acknowledged that in certain circumstances, a 
defendant would be entitled to assert a claim against the State if the State 
filed suit.
In Kinnear 
v. Texas Commission on Human Rights, 14 S.W.3d 299, 300 (Tex. 2000), we 
acknowledged that the trial court had jurisdiction over claims against the State 
in a case where the State had filed suit. In Kinnear, the Texas 
Commission on Human Rights filed suit against Kinnear, alleging that he had 
violated the Texas Fair Housing Act. Id. at 299. Kinnear counterclaimed 
for attorney’s fees as provided by the Act, and when he prevailed, the trial 
court awarded them. Id. at 300. In response to the question of whether 
the trial court had jurisdiction, we said that “[b]ecause the Commission 
initiated [the] proceeding under the Texas Fair Housing Act, and Kinnear claimed 
attorney fees as a consequence of that suit, the jurisdictional question in this 
case was answered when the Commission filed suit.” Id. Later, four 
concurring justices in a plurality opinion cited Kinnear and 
Anderson for the proposition that “the State can waive immunity by filing 
suit.” IT-Davy, 74 S.W.3d at 861 (Hecht, J., concurring).
In 
circumstances such as those now before us, where the governmental entity has 
joined into the litigation process by asserting its own affirmative claims for 
monetary relief, we see no ill befalling the governmental entity or hampering of 
its governmental functions by allowing adverse parties to assert, as an offset, 
claims germane to, connected with, and properly defensive to those asserted by 
the governmental entity. And, our decisions that immunity from suit does not bar 
claims against the governmental entity if the claims are connected to, germane 
to, and defensive to the claims asserted by the entity, in effect, modified the 
common-law immunity doctrine and, to an extent, abrogated immunity of the entity 
that filed suit. See Humble Oil, 169 S.W.2d at 710; Anderson , 62 
S.W.2d at 110.
Therefore, we 
hold that the decision by the City of Dallas to file suit for damages 
encompassed a decision to leave its sphere of immunity from suit for claims 
against it which are germane to, connected with and properly defensive to claims 
the City asserts. Once it asserts affirmative claims for monetary recovery, the 
City must participate in the litigation process as an ordinary litigant, save 
for the limitation that the City continues to have immunity from affirmative 
damage claims against it for monetary relief exceeding amounts necessary to 
offset the City’s claims. Moreover, we see no substantive difference between a 
decision by the City to file an original suit and the City’s decision to file 
its claim as an intervenor in Southwest’s suit. Accordingly, when the City filed 
its affirmative claims for relief as an intervenor, the trial court acquired 
subject-matter jurisdiction over claims made against the City which were 
connected to, germane to, and properly defensive to the matters on which the 
City based its claim for damages. See Anderson, 62 S.W.2d at 110. Absent 
the Legislature’s waiver of the City’s immunity from suit, however, the trial 
court did not acquire jurisdiction over a claim for damages against the City in 
excess of damages sufficient to offset the City’s recovery, if any. See 
City of LaPorte v. Barfield, 898 S.W.2d 288, 297 (Tex. 1995); 
Anderson, 62 S.W.2d at 110 (holding that when a governmental entity files 
suit, “the defense will be entitled to plead and prove all matters properly 
defensive”).[3]
Because the 
City’s assertion of claims for damages against Reata means that the City does 
not have immunity from Reata’s claims to the limited extent we have explained 
above, we must consider Reata’s remaining arguments to determine if the City’s 
immunity from suit has been completely waived in some manner.
B. Texas Tort Claims Act
Reata claims 
that the court of appeals erred in holding that its claims against the City do 
not fit within any waiver of immunity under the Tort Claims Act. Specifically, 
Reata claims that the court of appeals did not liberally construe its pleadings 
as asserting damages for personal injuries. See Tex. Dep’t of Transp. v. 
Ramirez, 74 S.W.3d 864, 867 (Tex. 2002) (noting that pleadings should be 
liberally construed in favor of jurisdiction).
Through the 
Tort Claims Act, the Legislature has waived the City’s immunity for “personal 
injury and death so caused by a condition or use of tangible personal or real 
property if the governmental unit would, were it a private person, be liable to 
the claimant according to Texas law.” Tex. Civ. Prac. & Rem. Code § 
101.021(2).
The court of 
appeals concluded that none of the damages claimed against the City—property and 
mental anguish damages—were recoverable under that subsection. 83 S.W.3d at 396. 
Reata argues that a claim for personal injury damages was made as the 
intervenors asserted that fumes from generators used in the flooded building 
after the water shorted out the electricity made them sick. However, section 
101.021(2) only waives immunity when the governmental unit is the user of the 
property. San Antonio State Hosp. v. Cowan, 128 S.W.3d 244, 245-46 (Tex. 
2004). There is no claim that the City was the user of the generators.
Reata also 
argues that if its claim was not properly pleaded to demonstrate a waiver of 
immunity, it should be given the opportunity to amend before its case is 
dismissed. See Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d 
217, 226-27 (Tex. 2004). But, in the trial court, the City twice filed special 
exceptions claiming that Reata failed to state a cause of action for which the 
City could be liable under the Tort Claims Act. Reata amended its petition 
twice, but its pleadings still fail to demonstrate a waiver of immunity. 
Accordingly, we hold that the court of appeals correctly determined that Reata’s 
claims do not fit within any waiver of immunity under the Tort Claims Act and 
that Reata was not entitled to replead.
C. Waiver of Immunity by the Local Government Code
and City Charter
Reata also 
claims the City’s immunity from suit is waived by section 51.075 of the Local 
Government Code, which provides that a home-rule municipality “may plead and be 
impleaded in any court.” See Tex. 
Loc. Gov’t Code § 51.075. However, waiver of immunity for tort claims is 
governed by the Texas Tort Claims Act. See Tex. Civ. Prac. & Rem. Code ch. 
101; Miranda, 133 S.W.3d at 224-25 (holding that the governmental entity 
was immune from suit for a tort unless it was expressly waived by the Tort 
Claims Act). Under rules of statutory construction, we give precedence to the 
Tort Claims Act over section 51.075 because the Tort Claims Act is the 
later-enacted, more specific statute regarding waiver of immunity in tort cases. 
See Tex. Gov’t Code § 
311.026. Moreover, in Tooke v. City of Mexia, ___ S.W.3d ___, ___ (Tex. 
2006), we have held that the phrase “plead and be impleaded” in section 51.075 
does not clearly and unambiguously reflect legislative intent to waive immunity 
from suit. See Taylor, 106 S.W.3d at 697-98 (Tex. 2003).
Reata also 
claims the City’s immunity is waived by the Dallas City Charter which states 
that the City may “sue and be sued” and “implead and be impleaded.” Dallas, Tex., City Charter ch. II, § 
1(2), (3). As we explain in Tooke, such phrases, separately or together, 
do not comprise a clear and unambiguous waiver of immunity to suit. 
Tooke, ___ S.W.3d at ___. The City Charter provision does not waive the 
City’s immunity from suit. See id.
IV. Conclusion
Because the 
City asserted affirmative claims for monetary relief against Reata, the City 
does not have immunity from Reata’s claims germane to, connected to, and 
properly defensive to claims asserted by the City, to the extent any recovery on 
those claims will offset any recovery by the City from Reata. We reverse the 
court of appeals’ judgment and remand the case to the trial court for further 
proceedings consistent with this opinion.
 
 
________________________________________
Phil 
Johnson
Justice
 
 
OPINION DELIVERED: June 
30, 2006






[1] For ease of reference, we will use the term “sovereign 
immunity” to reference both sovereign immunity and governmental 
immunity.

[2] The City argues that Anderson is in conflict 
with two prior cases from this Court in which we held immunity had not been 
waived as to claims brought against the governmental entity plaintiffs by the 
defendants. See Borden v. Houston, 2 Tex. 594, 611 (1847); Bates v. 
Republic, 2 Tex. 616, 618 (1847). However, those cases are distinguishable 
from Anderson because they involved claims by the defendants for set-offs 
unrelated to the governmental entities’ claims. Borden, 2 Tex. at 595-96; 
Bates, 2 Tex. at 616-17.

[3] At the time Anderson was decided, a claim of an 
offset was referred to as a defensive matter. See Sw. Contract Purchase Corp. 
v. McGee, 36 S.W.2d 978, 979 (Tex. 1931) (stating “defendant in error 
pleaded in defense . . . certain offsets and 
defenses”).