**REVERSE and RENDER; Opinion Filed May 23, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00198-CV

### THE STATE OF TEXAS, Appellant
### V.
### CASH AUTO SALES, INC. F/K/A/ LARRY LAKE D/B/A CASH AUTO SALES AND VIP FINANCE OF TEXAS, INC. F/K/A TRAVIS LAKE D/B/A VIP FINANCE, Appellees

**On Appeal from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-96-11528**

## MEMORANDUM OPINION

Before Justices Brown, Schenck, and Pedersen, III
Opinion by Justice Schenck

The State of Texas, acting through the Office of the Consumer Credit Commission (OCCC), appeals the trial court's denial of its plea to the jurisdiction and grant of temporary injunction directed to the OCCC. We reverse the trial court's orders denying the State's plea to the jurisdiction and granting temporary injunction and render judgment dismissing this case for lack of subject-matter jurisdiction.

### BACKGROUND

The OCCC is a state agency charged with enforcing various provisions of the Texas Finance Code. Appellee Cash Auto Sales, Inc. (CAS) is an auto club, and appellee VIP Finance of Texas, Inc. (VIP) makes title loans on cars. CAS and VIP are owned by Jonson Lake or trusts

that are controlled by members of the Lake family and both are operated by Lake family members.[1] Both entities came into legal existence in 2010. Before 2010, Kathy Lake and Dale Loyd owned a general partnership known as "Lease for Less," Larry Lake operated a sole proprietorship known as "C.A.S.H. Auto Sales," and Larry's son Travis Lake operated another sole proprietorship known as "VIP Finance."

In 1991, the State filed suit against Lease for Less, Larry Lake, Kathy Lake, and Dale Loyd[2] in the 134th District Court of Dallas County, alleging various violations of the consumer credit code and the Texas Deceptive Trade Practices Act (DTPA). That suit ended in the entry of an agreed interlocutory injunction against Larry Lake, Kathy Lake, and Dale Loyd (1993 Injunction). In 1996, the State filed a separate suit against Larry Lake d/b/a C.A.S.H. Auto Sales and Travis Lake d/b/a VIP Finance, alleging various violations of the DTPA, consumer credit code, and the 1993 Injunction. After a bench trial, the trial court denied the relief requested by the State (1998 Judgment).

In October 2012, the OCCC received a consumer complaint about VIP and began an investigation in May 2013. On March 17, 2017, the OCCC, acting pursuant to section 14.208 of the finance code,[3] issued an Order to Cease and Desist, to Take Affirmative Action, and to Make

---

[1] Initially, Larry and Kathy Lake owned and operated both CAS and VIP until Kathy's death in 2012. Upon Kathy's death, Larry and Kathy's daughter Chelsi Rechenstein and her husband Jake Rechenstein began to operate CAS and VIP. Jake Rechenstein set forth in a February 6, 2018 affidavit that the ownership structure of both VIP and CAS are "both still wholly owned, either personally or in trust, by the Lake Family." A letter from VIP's counsel dated February 3, 2017, stated that VIP and CAS share common owners with the ownership of each entity as follows:

- 10% — The Lake Family Trust B, Jonson Lake and Stacy Dannels, co-trustees
- 22.7% — The Lake Family Trust C, Jonson Lake and Stacy Dannels, co-trustees
- 17.3% — The Lake Family Trust D, Jonson Lake and Stacy Dannels, co-trustees
- 22.5% — Jonson Lake, individually
- 15% — The CLR Irrevocable Trust, Chelsi Reichenstein, trustee
- 12.5% — The JTR Irrevocable Trust, Jake Reichenstein, trustee

The February 3, 2017 letter also stated that Jonson Lake, Chelsi Rechenstein, and Jake Reichenstein served as officers for both VIP and CAS.

[2] The State also filed suit against Gary Pool, but later nonsuited its case against him.

[3] See TEX. FIN. CODE ANN. § 14.208(a) ("If the commissioner has reasonable cause to believe that a person is violating a statute to which this chapter applies, the commissioner, in addition to any other authorized action, may issue an order to cease and desist from the violation or an order to take affirmative action, or both, to enforce compliance.").

Restitution against VIP (2017 Order). In the 2017 Order, the OCCC found reasonable cause to believe that VIP was in violation of requirements for licensing and auto club memberships provided by Chapters 342 and 348 of the finance code. The 2017 Order also provided that it would become final if VIP did not request a hearing within 30 days. In April 2017, VIP requested a hearing, but asserted its request was subject to the jurisdiction of the 134th District Court to enforce its 1998 Judgment. A hearing was set for April 10, 2018, (2018 Administrative Proceeding) before the State Office of Administrative Hearings.

After the State served VIP with discovery requests in connection with the 2018 Administrative Proceeding, CAS and VIP filed a post-judgment application for ex parte restraining order, temporary injunction, and permanent injunction in the 134th District Court. In its application, CAS and VIP requested the trial court enjoin the OCCC from continuing the 2018 Administrative Proceeding, "taking any other action that would put into question the validity or proprietary nature of the Auto Club, or the business relationship of VIP and CAS," and "any further duplicative investigations of VIP, CAS, or the Auto Club unless subsequently ordered otherwise" by the trial court. The trial court granted the temporary restraining order and conducted a hearing on the temporary injunction and the State's plea to the jurisdiction. The trial court denied the State's plea to the jurisdiction and granted CAS and VIP's request for a temporary injunction.

## DISCUSSION

In its first issue, the State argues the trial court did not have jurisdiction to enter an antisuit injunction against it because sovereign immunity prevents trial court interference in administrative actions. Appellees respond that the State waived its sovereign immunity because it invoked the trial court's jurisdiction by filing suit in 1996. Appellees further respond that even if the State did not waive immunity, fact issues exist as to whether this case presents an exception to the general rule of sovereign immunity such that the trial court properly denied the plea to the jurisdiction.

Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). Whether a court has subject-matter jurisdiction is a question of law. *Id.* at 226. Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject-matter jurisdiction is a question of law reviewed *de novo. Id.* When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Id.* at 227. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, leaving the issue to be resolved by the fact finder. *Id.* at 227–28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court should rule on the plea to the jurisdiction as a matter of law. *Id.* at 228.

Administrative bodies are generally entitled to and should exercise the duties and functions conferred by statute without interference from the courts. *Westheimer Indep. Sch. Dist. v. Brockette*, 567 S.W.2d 780, 785 (Tex. 1978). Court intervention in administrative proceedings may be proper in certain, limited circumstances, such as when an agency is exercising authority beyond its statutorily conferred powers, or proceedings that amount to nothing more than an attack on prior judiciary judgment. *See id.* at 785, 788.

None of the parties disputes that the State had the authority to conduct administrative proceedings here. Instead, the parties dispute whether the 2018 Administrative Proceeding involves different alleged violations by different parties than the 1993 Injunction or the 1998 Judgment such that it is not relitigating issues or interfering with the enforcement of either the injunction or the prior judgment.

As discussed above, in 1991, the State filed suit against Lease for Less, Larry Lake, Kathy Lake, and Dale Loyd in the 134th District Court of Dallas County, alleging various violations of the DTPA and consumer credit code, and in 1996 the State filed suit against Larry Lake d/b/a C.A.S.H. Auto Sales and Travis Lake d/b/a VIP Finance, alleging various violations of the DTPA, consumer credit code, and the 1993 Injunction. Those proceedings resulted in the 1993 Injunction and the 1998 Judgment. The 1993 Injunction enjoined the defendants—not the State or the OCCC—from certain actions including, but not limited to, initiating or collecting fees on loans that violate the consumer credit code, evading the application of the 1993 Injunction, making certain sale-lease-back transactions of motor vehicles or other property, and engaging in other similar acts that would violate the consumer credit code. The 1998 Judgment indicated the trial court had conducted a bench trial and found defendants Larry Lake d/b/a C.A.S.H. Auto Sales and Travis Lake d/b/a VIP Finance had not conducted business in violation of the 1993 Injunction and denied the State's requests for permanent injunction, application for appointment of receiver, petition for civil penalties, actual damages, and attorney's fees. The 1998 Judgment also ordered defendants Larry Lake d/b/a C.A.S.H. Auto Sales and Travis Lake d/b/a VIP Finance recover their costs. That 1998 judgment entered no injunction against the State.

The 2017 Order indicates the 2018 Administrative Proceeding began with a new consumer complaint regarding VIP in October 2012 and continued with an investigation in May 2013. The 2017 Order states that the May 2013 investigation involved a review of 625 transaction records but does not indicate when those transactions took place. At the temporary injunction hearing, an OCCC employee testified the transactions described in the 2017 Order referred to transactions between 2009 to 2013, the OCCC had requested information about transactions since 2013, and none of the allegations in the 2018 Administrative Proceeding concern activities that happened in

the 1990s. The OCCC employee further stated that the OCCC did not intend to take any enforcement action on the basis of any transactions that occurred before 2009.

We conclude the State established the violations investigated in the 2018 Administrative Proceeding took place after those violations at issue in the 1993 Injunction and the 1998 Judgment and that the investigation of those later violations could not possibly interfere with the enforcement of either the 1993 Injunction or the 1998 Judgment. *See Brockette*, 567 S.W.2d at 788.

Appellees argue that, even if the transactions at issue in the 2018 Administrative Proceeding had not yet occurred at the time of the 1993 Injunction or the 1998 Judgment, they presented evidence that the charges in the 2018 Administrative Proceeding are identical in their legal theory to those decided by the 1998 Judgment. Appellees also cite to evidence that they had not substantially changed their business operations or manner of operations in any significant way since 1996. Appellees thus urge that the 2018 Administrative Proceeding is relitigating issues from the 1993 Injunction and the 1998 Judgment. However, appellees' argument ignores the holding in *Brockette* that courts might interject themselves to bar an administrative process only when it seeks to do "no more than relitigate the issues *and* where the mere filing of the action or request for a hearing destroys the effectiveness of the prior judgment or order." *See Brockette*, 567 S.W.2d at 788 (emphasis added). Appellees' position here, if accepted, would expand *Brockette* to the point of a plenary intervention device resembling collateral estoppel whenever legal issues overlap between earlier judicial proceedings and a later administrative process. That is not the rationale underlying *Brockette*. *See id.* Rather, *Brockette*, speaks only to the far more acute problem of administrative attack on the effectiveness of the prior judgment itself, which invariably involves the law and the facts as they existed at that moment in time and as they applied

to those parties.[4] *See id.* Because we concluded the 2018 Administrative Proceeding does not interfere with the enforcement of either the 1993 Injunction or the 1998 Judgment, we conclude the State established its sovereign immunity from trial court interference in the 2018 Administrative Proceeding.

We now address appellees' contention that the OCCC, or the State on the OCCC's behalf, waived any immunity from suit by appellees by filing suit against Larry Lake d/b/a C.A.S.H. Auto Sales and Travis Lake d/b/a VIP Finance in 1996. Appellees cite *Anderson, Clayton & Co. v. State*, 62 S.W.2d 107, 110 (Comm'n App. 1933), which stated, "where a state voluntarily files a suit and submits its rights for judicial determination, it will be bound thereby, and the defense will be entitled to plead and prove all matters properly defensive." That opinion does not hold—nor has this Court found any other controlling opinion that holds—that once a governmental entity has filed suit against a party, that governmental entity has limited immunity to ever defend against any later proceeding filed against it by the same party.[5] Instead, we find a later decision by the supreme court to be applicable.

In *State v. Humble Oil & Refining Co.*, 169 S.W.2d 707, 710 (Tex. 1943), the supreme court held the rule announced in *Anderson* did not apply where the State sued an oil company to recover taxes and the company claimed an offset for overpayment of taxes in the previous year. The *Humble Oil* court reasoned that because the offset claim was for taxes owed for a different taxing period, the two claims were entirely independent of each other. *See id.* As more fully discussed above, we concluded the transactions at issue in the 2018 Administrative Proceeding are distinct from those at issue in the 1993 Injunction and 1998 Judgment. Accordingly, we cannot

---

[4] Quite apart from the differences in time and the scope of *Brockette*, we note that the earlier judgment was directed against Larry and Kathy Lake and Dale Loyd in their individual capacities. While CAS and VIP are owned and operated by various Lake family members, we would assume the validity of their corporate status for purposes of examining whether an identity of parties exists between the two actions. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 39 cmt. b, illus. 4 (AM. LAW INST. 2019).

[5] We assume for the sake of this waiver analysis that the parties to the suit filed in 1996 are the same as those in the 2018 Administrative Proceeding, an issue we need not decide in light of our discussion and conclusions herein.

conclude the State or the OCCC waived any sovereign immunity related to the 2018 Administrative Proceeding by filing suit in 1996. *See id.*

We sustain the State's first issue and conclude the trial court erred in denying the State's plea to the jurisdiction. In light of our resolution of the State's first issue, we need not address their remaining issue regarding the issuance or breadth of the temporary injunction. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

We reverse the trial court's orders denying the State's plea to the jurisdiction and granting temporary injunction and render judgment dismissing this case for lack of subject-matter jurisdiction.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

180198F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-18-00198-CV     V.

CASH AUTO SALES, INC. F/K/A/
LARRY LAKE D/B/A CASH AUTO
SALES AND VIP FINANCE OF TEXAS,
INC. F/K/A TRAVIS LAKE D/B/A VIP
FINANCE, Appellees

On Appeal from the 134th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-96-11528.
Opinion delivered by Justice Schenck,
Justices Brown and Pedersen, III
participating.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's February 22nd, 2018 Order Denying the State of Texas' First Amended Plea to the Jurisdiction and February 22nd, 2018 Temporary Injunction Directed to the State of Texas, Acting at the Request of the Office of Consumer Credit Commissioner Leslie L. Pettijohn. We **RENDER** judgment dismissing Cash Auto Sales, Inc. and VIP Finance of Texas, Inc.'s post-judgment application for ex parte temporary restraining order, temporary injunction and permanent injunction for lack of subject-matter jurisdiction.

It is **ORDERED** that THE STATE OF TEXAS recover its costs of this appeal from CASH AUTO SALES, INC. F/K/A/ LARRY LAKE D/B/A CASH AUTO SALES AND VIP FINANCE OF TEXAS, INC. F/K/A TRAVIS LAKE D/B/A VIP FINANCE.

Judgment entered this 23rd day of May 2019.