ACCEPTED
15-24-00075-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
3/12/2025 12:39 PM
CHRISTOPHER A. PRINE
CLERK

**CAUSE NO. 15-24-00075-CV**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
3/12/2025 12:39:17 PM
CHRISTOPHER A. PRINE
Clerk

IN THE COURT OF APPEALS FOR THE FIFTEENTH DISTRICT
OF AUSTIN, TEXAS

SIGNAD, LTD.,

Appellant,

V.

TEXAS DEPARTMENT OF TRANSPORTATION
Appellee.

On Appeal from the 126th Judicial District Court of Travis County, Texas; Cause
No. D-1-GN-21-004113; the Honorable
Aurora Martinez Jones, Presiding

## REPLY BRIEF OF APPELLANT SIGNAD, LTD.

Christopher W. Rothfelder
State Bar No. 24084740
crothfelder@rothfelderfalick.com
Richard L. Rothfelder
Texas Bar No. 17318100
rrothfelder@rothfelderfalick.com
1517 Heights Blvd.
Houston TX 77008
Telephone: 713-220-2288
Facsimile: 713-658-8211
**ATTORNEYS FOR PLAINTIFF,
SIGNAD, LTD.**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS..................................................................................... i

INDEX OF AUTHORITIES.............................................................................. iii

SUMMARY OF THE ARGUMENT ................................................................. 2

ARGUMENT AND AUTHORITIES................................................................ 3

    A.    The trial court should have applied a de novo standard of
Review.................................................................................................. 3

    B.    SignAd was entitled to adjust the Sign pursuant to TxDOT's
Regulations ......................................................................................... 5

    C.    SignAd did not waive any issues for review ...................................... 11

        1.    The standard for whether an issue is preserved for an
appeal of a Transportation Commission order is fair
notice ....................................................................................... 11

        2.    SignAd preserved error for this appeal ..................................... 12

        3.    TxDOT had fair notice of SignAd's complaints regarding
the Settlement Agreement and attorney's fees ......................... 17

        4.    SignAd asserted separate claims against TxDOT for breach
of the Settlement Agreement and recovery of attorney's
fees, to which TxDOT did not respond..................................... 19

    D.    SignAd was entitled to adjust the Sign pursuant to the terms
of the Settlement Agreement, and was therefore entitled to
its attorney's fees............................................................................... 19

        1.    TxDOT misconstrues the importance of the Settlement
Agreement................................................................................ 19

        2.    SignAd was entitled to its attorney's fees................................ 23

i

PRAYER......................................................................................................26

CERTIFICATE OF COMPLIANCE..................................................................27

CERTIFICATE OF SERVICE .........................................................................27

# INDEX OF AUTHORITIES

**CASES**                                                                                   **PAGE**

*Anderson, Clayton & Co. v. State ex rel. Allred*,
    122 Tex. 530, 62 S.W.2d 107 (Comm'n App. 1933) ...................................26

*BFI Waste Sys. of N. Am., Inc. v. Martinez Env't Grp.*,
    93 S.W.3d 570 (Tex. App.—Austin 2002, pet. denied) ......................... 11, 17

*Burke v. Central Educ. Agency*,
    725 S.W.2d 393 (Tex. App.—Austin 1987, writ ref'd n.r.e.) ................ 12, 14

*CenterPoint Energy Houston Elec., LLC v. Pub. Util. Comm'n of Texas*,
    408 S.W.3d 910 (Tex. App.—Austin 2013, pet. denied) ............................4. 5

*Central Power & Light Co. v. Public Util. Comm'n*,
    36 S.W.3d 547 (Tex. App.—Austin 2000, pet. denied) ...............................15

*City of Celina v. Blair*,
    171 S.W.3d 608 (Tex. App.—Dallas 2005, no pet.) ....................................16

*Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*,
    835 S.W.2d 75 (Tex. 1992) ........................................................................26

*Everitt v. Emps. Ret. Sys.*,
    No. 03-99-00400-CV,
    2000 WL 263124 (Tex. App.—Austin 2000, no pet.) .................................15

*Fleming Foods of Tex., Inc.v. Rylander*,
    6 S.W.3d 278 (Tex. 1999) ..........................................................................10

*Goepp v. Comerica Bank & Tr., N.A.*,
    No. 03-19-00485-CV,
    2021 WL 2878562 (Tex. App.—Austin July 9, 2021, no pet.)....................25

*Hawkins v. Anderson*,
    672 S.W.2d 293 (Tex. App.—Dallas 1984, no writ)...................................15

*HSBC Bank USA, N.A. v. Watson*,
    377 S.W.3d 766 (Tex. App.—Dallas 2012, pet. dism'd).............................15

*John Gannon, Inc. v. Texas Dep't of Transportation*,
No. 03-18-00696-CV,
2020 WL 6018646 (Tex. App.—Austin 2020, pet. denied)
(mem. op.)...................................................................................9, 11

*Morgan v. Employees Retirement Sys. of Texas*,
872 S.W.2d 819 (Tex. App.—Austin 1994, no writ) ............................ 12, 15

*Nazari v. State*,
561 S.W.3d 495 (Tex. 2018) ...............................................................25

*NGL Water Sols. Eagle Ford, LLC v. R.R. Comm'n of Texas*,
No. 03-17-00808-CV,
2019 WL 6336178 (Tex. App.–Austin 2019, no pet.) (mem. op.).................4

*Quality Hardwoods, Inc. v. Midwest Hardwood Corp.*,
No. 2-05-311-CV, 2007 WL 1879797 (Tex. App.—Fort Worth June 28,
2007, no pet.) (mem. op.) ....................................................................16

*Rodriguez v. Serv. Lloyds Ins. Co.*,
997 S.W.2d 248 (Tex. 1999) ...................................................................4

*State v. Clear Channel Outdoor, Inc.*,
463 S.W.3d 488 (Tex. 2015) ...................................................................8

*Suburban Util. Corp. v. Pub. Util. Comm'n of Texas*,
652 S.W.2d 358 (Tex. 1983) ............................................................ 11, 19

*Texas Water Comm'n v. Customers of Combined Water Sys., Inc.*,
843 S.W.2d 678 (Tex. App.—Austin 1992, no writ) ..................................15

*TGS–NOPEC Geophysical Co. v. Combs*,
340 S.W.3d 432 (Tex. 2011) ..............................................................4, 10

*TJFA, L.P. v. Texas Comm'n on Env't Quality*,
No. 03-10-00016-CV,
2014 WL 3562735 (Tex. App.–Austin 2014, pet. denied).............................4

**REGULATIONS AND STATUTES**

43 Tex. Admin. Code § 21.142..............................................................8

43 Tex. Admin. Code § 21.145...................................................................... 20, 23

43 Tex. Admin. Code § 21.148 ...........................................................................20

43 Tex. Admin. Code § 21.150 .............................................................................6

43 Tex. Admin. Code § 21.166 ...........................................................................10

43 Tex. Admin. Code § 21.174 ...........................................................................13

43 Tex. Admin. Code § 21.176 ...................................................................... 21, 22

43 Tex. Admin. Code § 21.186 ...........................................................................23

43 Tex. Admin. Code § 21.191 ..................................................................... 5, 6, 7

43 Tex. Admin. Code § 21.192 ................................... 5, 6, 7, 8, 10, 18, 22

Tex. Civ. Prac. & Rem. Code § 38.001 ...............................................................17

Tex. Gov't Code § 2001.146.................................................... 3, 11, 12, 13

Tex. Transp. Code, § 393.002.............................................................................20

**RULES**

Tex. R. App. P. 9.4..............................................................................................27

Tex. R. Civ. P. 59...............................................................................................16

Tex. R. Evid. 103 ...............................................................................................18

**CAUSE NO. 15-24-00075-CV**

_____

IN THE COURT OF APPEALS FOR THE FIFTEENTH DISTRICT
OF AUSTIN, TEXAS

_____

SIGNAD, LTD.,

Appellant,

V.

TEXAS DEPARTMENT OF TRANSPORTATION
Appellee.

_____

On Appeal from the 126th Judicial District Court of Travis County, Texas; Cause
No. D-1-GN-21-004113; the Honorable
Aurora Martinez Jones, Presiding

**REPLY BRIEF OF APPELLANT SIGNAD, LTD.**

TO THE HONORABLE COURT OF APPEALS:

Appellant, SignAd, Ltd. ("SignAd"), submits this Brief in Reply to the Brief

of Appellee, Texas Department of Transportation ("TxDOT").

1

## SUMMARY OF THE ARGUMENT

The primary issue on appeal is whether SignAd's alteration of the Sign, which was done to accommodate the state's road widening project, constituted a "substantial change." The Sign was an ordinary, legally nonconforming commercial sign, as established by the testimony of TxDOT's representative and the parties' 2011 Settlement Agreement. Application of the plain language of TxDOT's regulations to the evidence presented at the hearing on the merits demonstrates that TxDOT erred when it denied SignAd's amended permit application and later cancelled SignAd's permit. Because TxDOT failed to honor the agreements made in the Settlement Agreement, including those regarding the conforming status of the Sign, SignAd was also entitled to an award of attorney's fees.

But this Court does not need to even consider the merits, because the trial court applied an incorrect standard of review. Because the facts were undisputed and the only issue before the trial court concerned the correct interpretation of state statutes and regulations, the trial court erred by applying the substantial evidence rather than de novo standard of review.

Notwithstanding, TxDOT insists on an erroneous interpretation of both the Settlement Agreement and Department regulations. The evidence and arguments presented in SOAH demonstrate that SignAd was entitled to carry out the scope of work necessary to adjust the Sign away from the state's expanded highway, and that

2

TxDOT failed to honor the provisions of the Settlement Agreement, thus rendering SignAd the prevailing party entitled to attorney's fees.

SignAd briefed (exhaustively) the matters raised in this appeal. SignAd's motion for rehearing identified the Transportation Commission's erroneous conclusion of law and the legal basis upon which the claim of error rested, in accordance with Tex. Gov't Code § 2001.146(g). SignAd therefore did not waive any issues for the trial court's review.

This Court should reverse the Order of the Commission cancelling Permit No. PMT-HBA-13236, affirm the Commission's decision to not impose administrative penalties against SignAd, and remand these proceedings for a determination of the attorneys' fees to which SignAd is entitled, or at the very least, remand to the trial court for further proceedings to be conducted under a de novo standard of review.

## ARGUMENT AND AUTHORITIES

### A. THE TRIAL COURT SHOULD HAVE APPLIED A DE NOVO STANDARD OF REVIEW.

TxDOT asserts that SignAd insisted on de novo review for the first time on appeal. TxDOT Br. 19. Not true. SignAd explained in its Opening Brief filed in the trial court, in the section titled, "Standard of Review," "Although the Court applies substantial-evidence review to an agency's fact findings, the Court reviews an agency's legal conclusions de novo." CR. 52.

TxDOT fails to explain why this Court should ignore the precedent of the Third Court of Appeals and Texas Supreme Court holding that, although a suit for judicial review of a final agency decision in a contested case is generally governed by substantial evidence review, when, as here, the relevant facts are undisputed, the Court reviews the interpretation of the administrative regulations de novo. *CenterPoint Energy Houston Elec., LLC v. Pub. Util. Comm'n of Texas*, 408 S.W.3d 910, 916 (Tex. App.—Austin 2013, pet. denied); *see Rodriguez v. Serv. Lloyds Ins. Co.*, 997 S.W.2d 248, 254 (Tex. 1999); *NGL Water Sols. Eagle Ford, LLC v. R.R. Comm'n of Texas*, No. 03-17-00808-CV, 2019 WL 6336178, at *6 (Tex. App.–Austin 2019, no pet.) (mem. op.); *TJFA, L.P. v. Texas Comm'n on Env't Quality*, No. 03-10-00016-CV, 2014 WL 3562735, at *2 (Tex. App.–Austin 2014, pet. denied).

This Court interprets administrative regulations under traditional principles of statutory construction. *CenterPoint Energy Houston Elec., LLC*, at 916; *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011); *Rodriguez*, 997 S.W.2d at 254. Only if a rule "is ambiguous or leaves room for policy determinations," does this Court defer to an agency's interpretation. *CenterPoint Energy Houston Elec., LLC*, at 916. And here, even TxDOT maintains that "there is no ambiguity to the TxDOT rules that SignAd violated in this case." TxDOT Br. at 25.

Given the absence of undisputed facts and lack of ambiguity of the applicable TxDOT rules, the trial court was required to apply a de novo standard review. *CenterPoint Energy Houston Elec., LLC*, at 916. The trial court, however, applied a substantial evidence standard of review. SR.33. On that basis alone, this Court should, at the very least, reverse the decision of the trial court.

**B.** **SignAd was entitled to adjust the Sign pursuant to TxDOT's regulations.**

The primary issue in this administrative appeal is whether SignAd's actions in shifting the face of the Sign away from the state's expanded right of way constituted a substantial change, thereby warranting cancellation of the Sign's TxDOT-issued permit. They did not. The testimony of TxDOT's sole witness and the proper application of TxDOT regulations establishes that SignAd did not make a substantial change to the Sign.

The Department misconstrues the controlling provisions of 43 Tex. Admin. Code §§ 21.191 & .192[1] in its contention that TxDOT was justified in cancelling the Sign's permit based on the removal of a pole and moving of the Sign.

The pertinent provisions of Section 21.192(d) stated,

> Notwithstanding other provisions of this section, if only a part of a sign will be located within the highway right of way as a result of the construction project, the sign owner may apply to amend the existing permit for the sign to authorize:

---

[1] References to TxDOT's regulations will refer to those regulations in effect at the time of the alleged violations. Copies of pertinent regulations are included in the Appendix to SignAd's Appellant's Brief.

5

(2) the relocation of the poles and sign face of a multiple [sic] sign structure that is located in the proposed right of way from the proposed right of way and the required five-foot setback to the land on which the other poles of the sign structure are located; or

(3) a reduction in the size of a sign structure that is located partially in the proposed right of way and the required five-foot setback so that the sign structure and sign face are removed from the proposed right of way and the required five-foot setback.

43 Tex. Admin. Code § 21.192(d)(2) & (3).

Section 21.191(c)(8), in turn, states, "The following are examples of substantial changes that may be made but require an amended permit before the initiation of such an activity: moving the sign structure or sign face *in any way unless the movement is made in accordance with §21.192 of this subchapter* (relating to Permit for Relocation of Sign)." 43 Tex. Admin. Code § 21.191(c)(8) (emphasis added).

Although Section 21.150(c)(2) provides, "A nonconforming sign may not be: substantially changed, as described by §21.191 of this subchapter (relating to Repair and Maintenance of Commercial Signs)," that is not what SignAd did. Rather, SignAd moved the sign structure and sign "in accordance with § 21.192," which is not a substantial change according to Section 21.191(c)(8).

SignAd moved the Sign's face away from the expanded highway bridge, and in doing so, necessarily removed a pole that would have been located in the path of

6

the expanded overpass. Doing so constitutes the reduction of the sign face of a multipole sign face, in accordance with 43 Tex. Admin. Code § 21.192(d)(2).

TxDOT maintains that SignAd was not eligible to take advantage of the provisions of Section 21.192(d)(2), since SignAd *removed* rather than *relocated* one of the Sign's poles. TxDOT Br. 33, n.8. TxDOT conspicuously misreads Section 21.191(c)(8), stating, "One such substantial change is moving the sign structure in any way." TxDOT Br. 34.

The full text of Section 21.191(c)(8), is critical to this analysis: "The following are examples of substantial changes that may be made but require an amended permit before the initiation of such an activity: . . . (8) moving the sign structure or sign face in any way unless the movement is made in accordance with §21.192 of this subchapter (relating to Permit for Relocation of Sign)." 43 Tex. Admin. Code § 21.191(c)(8).

SignAd's scope of work fell within Section 21.192(d)(3) which permits "a reduction in the size of a sign structure that is located partially in the proposed right of way and the required five-foot setback so that the sign structure and sign face are removed from the proposed right of way and the required five-foot setback," in accordance with 43 Tex. Admin. Code § 21.192(d)(3).

The term "sign structure" is defined as, "All of the interrelated parts and materials that are used, designed to be used, or intended to be used to support or

7

display information contents. ***The term includes, at a minimum***, beams, ***poles***, braces, apron, frame, catwalk, stringers, and a sign face." 43 Tex. Admin. Code § 21.142 (emphasis added). SignAd reduced the size of the sign structure by removing a pole, thus qualifying for the right to relocate the Sign in accordance with Section 21.192. Since SignAd moved the Sign, "in accordance with § 21.192," which includes the option to remove a pole, its actions did not constitute a substantial change warranting cancellation of the Sign's permit.

TxDOT also argues that it had discretion to grant or deny SignAd's amended permit application. TxDOT Br. 33. As stated above, Section 21.192(a) begins, "A commercial sign that has been timely removed from a department construction project site may be relocated in accordance with this section . . .." 43 Tex. Admin. Code § 21.192(a).

When put in the context of Texas eminent domain procedure and jurisprudence, a plain reading of Section 21.192(a) indicates that it is the *sign owner* that is afforded discretion of whether to relocate a sign if certain requirements are met. In 2015, the Texas Supreme Court delivered its opinion in *State v. Clear Channel Outdoor, Inc.*, 463 S.W.3d 488 (Tex. 2015), which drastically altered the way the state treated billboards impacted by public projects.

Following the issuance of the Court's opinion, TxDOT adopted a new policy for the treatment of billboards in eminent domain and requirements for obtaining a

relocation permit, titled, "Amended Guidance for Impacted Off-Premise Billboards Affected by Highway Transportation Projects" (the "Guidance"). *John Gannon, Inc. v. Texas Dep't of Transportation*, No. 03-18-00696-CV, 2020 WL 6018646, at *2 (Tex. App.—Austin 2020, pet. denied) (mem. op.).

The Guidance informed the reader: "In light of recent Texas Supreme Court case-law, the Right of Way Division has revised how it treats billboards in the course of acquiring property as part of a highway construction project." *Id*. The Guidance goes on to provide a choice to the sign owner—remove and retain the impacted billboard in order to maintain eligibility for a relocation permit, or allow the state to remove the sign and seek compensation through eminent domain. *Id*. at *3. The Guidance describes the sign owner's choice as follows:

- If the billboard structure owner chooses to retain the structure and this is properly reflected in the deed, TxDOT will provide the sign owner, a Notice to Vacate at a date certain that corresponds with the language in the deed, which should be no less than 60 days prior to the date on which the land on which the sign is erected is needed for construction purposes.
- If the billboard structure owner does not remove the structure per the deed and Notice to Vacate, the ownership shall revert back to the state for removal. The sign structure owner will forfeit the salvage value paid to the state AND their eligibility for a relocation permit under the Outdoor Advertising permitting regulations.
- If the billboard structure owner does not choose to retain the structure, then they will not be provided the ability to apply for a relocation permit under the current Outdoor Advertising permitting regulations and any application by the sign owner would be treated as an application for a new permit.

*Id.* In sum, TxDOT's policies clarify that it is the *sign owner* that has the discretion to decide whether to relocate a sign through compliance with TxDOT's mandated procedures.

Had the Transportation Commission intended to afford TxDOT discretion to deny permit applications then it would have incorporated such language into the regulations. In contrast to Section 21.192, the Transportation Commission implemented other rules that do provide TxDOT with a degree of discretion when considering permit applications. *See, e.g.*, 43 Tex. Admin. Code § 21.166(c) ("The department, ***in its discretion***, may refuse to issue a permit or approve an application for an amended permit if the location of the sign is within the corridor of a section of highway that has received environmental clearance, but for which the construction contract has not been awarded.") (emphasis added).

If TxDOT were given discretion to deny a permit for any reason, then the ability to relocate a sign pursuant to Rule 21.192, in exchange for the timely removal of an impacted sign or its encroachment into the right of way, would be rendered meaningless. *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999); *TGS–NOPEC Geophysical Co.*, 340 S.W.3d at 438. For example, a sign owner could fully comply with Sections 21.192 and .193, yet still be denied a relocation permit for no reason at all. The Transportation Commission implemented the relocation provisions of the Administrative Code in order to incentivize sign

owners to timely remove impacted signs and avoid extra costs and delays in state highway projects. *See John Gannon, Inc.*, 2020 WL 6018646, at \*2. Such incentives would be rendered valueless if they were merely discretionary.

**C.     SIGNAD DID NOT WAIVE ANY ISSUES FOR REVIEW.**

SignAd's Motion for Rehearing satisfied the dual, straight forward requirements for preserving error set out in Tex. Gov't Code § 2001.146(g). Moreover, SignAd's position regarding the effect of the Settlement Agreement and SignAd's entitlement to attorney's fees was thoroughly briefed in SOAH and properly preserved for this appeal. TxDOT therefore had more than ample notice of SignAd's objection that the Administrative Law Judge and Transportation Commission erred by not reversing the cancellation of the Sign's permit based on the impact of the Settlement Agreement and erred by not awarding SignAd its attorney's fees pursuant to the terms of the Settlement Agreement.

**1.     The standard for whether an issue is preserved for an appeal of a Transportation Commission order is fair notice.**

The parties agree that the purpose of a motion for rehearing is "to apprise the regulatory agency of the error claimed and to allow the agency opportunity to correct the error or to prepare to defend it." *Suburban Util. Corp. v. Pub. Util. Comm'n of Texas*, 652 S.W.2d 358, 365 (Tex. 1983); TxDOT Br. 37. Whether a motion for rehearing is sufficient to preserve error for an appeal to district court is judged under a standard of "fair notice." *BFI Waste Sys. of N. Am., Inc. v. Martinez Env't Grp.*, 93

S.W.3d 570, 578 (Tex. App.—Austin 2002, pet. denied); *Morgan v. Employees Retirement Sys. of Texas*, 872 S.W.2d 819, 822 (Tex. App.—Austin 1994, no writ) ("Where the overall purpose of a motion for rehearing is achieved, we will not penalize a party for being unorthodox. This is especially true when the sanction results in the trial court's loss of jurisdiction and a complete denial of judicial review.").

A motion for rehearing must point out "(1) the particular finding of fact, conclusion of law, ruling, or other action by the agency which the complaining party asserts was error; and (2) the legal basis upon which the claim of error rests." *Id.*; *see also Burke v. Central Educ. Agency*, 725 S.W.2d 393, 397 (Tex. App.—Austin 1987, writ ref'd n.r.e.); Tex. Gov't Code § 2001.146(g). Neither of these elements, however, requires a briefing of the law and the facts. *Id.*

## 2. SignAd preserved error for this appeal.

TxDOT falsely contends that "SignAd did not identify with particularity alleged errors regarding the settlement agreement and attorney's fees in its motion for rehearing." TxDOT Br. 40.

The standard for error preservation is not as onerous as TxDOT contends. It is a standard of "fair notice." The standard merely requires that the movant, first, "identify with particularity findings of fact or conclusions of law that are the subject of the complaint and any evidentiary or legal ruling claimed to be erroneous." Tex.

12

Gov't Code § 2001.146(g). Second, the movant must "state the legal and factual basis for the claimed error." *Id*. SignAd's Motion for Rehearing satisfied both of these requirements.

The conclusion of law at issue in the Transportation Commission's Order is conclusion of law 9, which stated, "By removing a pole from the Sealy Sign, and by moving the Sign, SignAd made substantial changes to a nonconforming sign in violation of Code chapter 391 and TxDOT rules. 43 TAC 21.174(d)." AR 2506. SignAd identified this conclusion of law, and stated the legal and factual basis for the error, in paragraph 22 of SignAd's Motion for Rehearing: "SignAd excepts to Conclusion of Law 9, because as explained herein, as well as in SignAd's Closing Brief, SignAd's adjustment of the Sign did not constitute a 'substantial change.'" AR 2518.

SignAd's Closing Brief included the same arguments that address whether SignAd's actions constituted a substantial change, and correspondingly, whether SignAd was entitled to attorney's fees, as those arguments and authorities included in SignAd's briefs and petition for review filed in this case. AR 2140–47. Thus, SignAd's Motion for Rehearing satisfied the requirements of Tex. Gov't Code § 2001.146(g) since it identified with particularity the conclusion of law that is the subject of SignAd's complaint, and stated the legal and factual basis for the claimed error.

Additionally, footnote 1 to SignAd's Motion for Rehearing stated the following:

> SignAd fully briefed the issues from the final hearing in this case in SignAd, Ltd.'s Closing Brief and SignAd, Ltd.'s Response to TxDOT's Closing Arguments. In addition, SignAd has previously filed Motions for Summary Disposition on the factual and legal issues presented in this case. ***SignAd fully incorporates each of these pleadings into this Motion for Rehearing as if fully set forth herein.***

AR 2508 (emphasis added). Incidentally, TxDOT also incorporated its pleadings by reference into its Reply to SignAd's Motion for Rehearing. AR 2520 ("TxDOT fully incorporates any and all of its pleadings including, but not limited to, its motions, replies, and responses with all its factual and legal issues, along with all hearing on the merits exhibits and transcripts presented into this reply to SignAd's motion for rehearing as if fully set forth herein.").

SignAd's Motion for Rehearing satisfied the standard announced in *Burke*, upon which TxDOT places great emphasis. The Third Court of Appeals determined in *Burke* that the following statement in Burke's motion for rehearing was insufficiently particular to preserve error: "Petitioner hereby incorporates by reference the papers and records already on file in this cause and in addition to the errors demonstrated in such papers, relies upon the following as additional basis [sic] for this motion: . . .." *Burke*, at 399.

Complaints raised in SignAd's Motion for Rehearing were more specific than those made in *Burke*. SignAd specifically objected to the Commission's conclusion

14

of law 9, which stated that moving the Sign's face and removing a pole constituted a "substantial change." AR 2518. SignAd also made specific reference to the arguments raised in its Closing Brief, AR 2518, which detailed the errors specific to the Settlement Agreement and SignAd's entitlement to fees. AR 2140–47.

The Third Court of Appeals has held on numerous occasions that an applicant may satisfy the standard required for a motion for rehearing by referring in a motion for rehearing to a memorandum alleging specific deficiencies. *Everitt v. Emps. Ret. Sys.*, No. 03-99-00400-CV, 2000 WL 263124, at *2 (Tex. App.—Austin 2000, no pet.); *see Morgan v. Employees Retirement Sys. of Texas*, 872 S.W.2d 819, 822 (Tex. App.—Austin 1994, no writ); *see also Texas Water Comm'n v. Customers of Combined Water Sys., Inc.*, 843 S.W.2d 678, 682 (Tex. App.—Austin 1992, no writ); *Central Power & Light Co. v. Public Util. Comm'n*, 36 S.W.3d 547, 569–70 (Tex. App.—Austin 2000, pet. denied) (motion for rehearing complaining of failure of agency to satisfy one subsection of a statute was adequate to preserve error with respect to the following subsection of the same statute, which necessarily incorporated and elaborated upon the previous subsection).

Additionally, TxDOT waived any objection to SignAd's incorporation of other pleadings by reference by not raising such an objection in a special exception. *See Hawkins v. Anderson*, 672 S.W.2d 293, 295 (Tex. App.—Dallas 1984, no writ); *see also HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766, 775–76 (Tex. App.—

15

Dallas 2012, pet. dism'd) (attachment of documents to pleadings and a simple reference to them in the pleadings makes them a part of the pleadings for all purposes under Tex. R. Civ. P. 59); *Quality Hardwoods, Inc. v. Midwest Hardwood Corp.*, No. 2-05-311-CV, 2007 WL 1879797, at *2, n.5 (Tex. App.—Fort Worth June 28, 2007, no pet.) (mem. op.); *City of Celina v. Blair*, 171 S.W.3d 608, 612 n.5 (Tex. App.—Dallas 2005, no pet.).

SignAd fully and completely briefed the factual and legal basis for SignAd's position that SignAd was entitled to adjust the Sign pursuant to the terms of the Settlement Agreement, in the section of its Closing Brief titled, "SignAd was Entitled to Adjust the Sign Pursuant to the 2011 Settlement Agreement." AR 2140–42. Likewise, SignAd fully and completely briefed its entitlement to attorney's fees in the section of SignAd's Closing brief titled, "SignAd is Entitled to Recovery of its Attorneys' Fees." AR 2145–47.

SignAd also discussed at length the impact of the Settlement Agreement on the propriety of the cancellation of the Sign's permit in SignAd's Response to TxDOT's Closing Arguments, AR 2256–58, as well as in SignAd's Fourth Motion for Summary Disposition, AR 0692, both of which were fully incorporated into SignAd's Motion for Rehearing as if fully set forth therein. AR 2508.

SignAd's Closing Brief, Response to TxDOT's Closing Brief, and Fourth Motion for Summary Disposition identified the agency actions SignAd asserted were

16

error and the legal basis upon which such claims of error rested. *BFI Waste Sys. of N. Am., Inc.*, 93 S.W.3d at 578. These pleadings were fully incorporated into SignAd's Motion for Rehearing, and as such, SignAd preserved its complaints for this appeal. *Id.*

### 3. TxDOT had fair notice of SignAd's complaints regarding the Settlement Agreement and attorney's fees.

TxDOT cannot reasonably maintain that it did not receive fair notice of SignAd's position regarding the application of the Settlement Agreement to the cancellation of the Sign's permit and SignAd's entitlement to attorney's fees, since SignAd thoroughly briefed and argued those issues in SOAH.

In its Second Amended Answer, filed with SOAH on August 24, 2020, SignAd asserted that it was entitled to its attorney's fees pursuant to Paragraph 16 of the Settlement Agreement and Tex. Civ. Prac. & Rem. Code § 38.001(8). AR 0091.

SignAd filed a designation of its expert on attorney's fees on September 16, 2020. AR 1890.

Prior to the hearing on the merits, SignAd filed a comprehensive Pre-Hearing Brief, which included the same arguments (regarding the impact of the Settlement Agreement and SignAd's entitlement to attorney's fees) that SignAd makes in this appeal and that TxDOT now asserts SignAd has waived. AR 2115–17.

At the hearing on the merits, SignAd argued and introduced testimony that it was entitled to alter the Sign to accommodate the state's project by virtue of the Settlement Agreement. AR 2869. Though the Administrative Law Judge would not entertain testimony regarding SignAd's attorney's fees, SignAd made an offer of proof to preserve error regarding the refusal to admit such evidence. Tex. R. Evid. 103(a)(2); AR 2868.

Following the hearing, SignAd submitted its Closing Brief, which once again explained in detail SignAd's interpretation of the Settlement Agreement, AR 2140–42, and entitlement to a fee award. AR 2145–47.

Importantly, in its Proposed Findings of Fact and Conclusions of Law, AR 2251, Exceptions to the Administrative Law Judge's Proposal for Decision, AR 2482, and Motion for Rehearing, AR 2515, SignAd argued that the Sign was legally erected and maintained as a result of the Settlement Agreement, and therefore SignAd was entitled to alter the Sign pursuant to the provisions of 43 Tex. Admin. Code § 21.192. Indeed, in its Motion for Rehearing, SignAd cited to the testimony of TxDOT's witness, Wendy Knox, to support SignAd's position that the Sign was "legally erected and maintained." AR 2515. Ms. Knox conceded at the hearing "that the settlement agreement made the sign legally nonconforming . . .." AR 2944.

Lastly, SignAd thoroughly briefed the issues regarding the application of the Settlement Agreement and entitlement to fees in its Petition for Review filed in the trial court. CR.3.

In numerous pleadings filed before and after the hearing in SOAH, SignAd detailed its claims regarding the Settlement Agreement and entitlement to fees. TxDOT had fair notice of SignAd's claims and every opportunity to correct its error and prepare to defend it. *Suburban Util. Corp.*, 652 S.W.2d at 365. SignAd therefore properly preserved all issues asserted in this appeal.

**4. SignAd asserted separate claims against TxDOT for breach of the Settlement Agreement and recovery of attorney's fees, to which TxDOT did not respond.**

In addition to properly preserving all issues for this appeal through SignAd's Motion for Rehearing, SignAd also asserted affirmative claims against TxDOT for breach of the Settlement Agreement and attorney's fees. SignAd's CR.17. TxDOT's Original Answer filed in the trial court did not specifically address SignAd's affirmative claims for relief. CR.29.

**D. SignAd was entitled to adjust the Sign pursuant to the terms of the Settlement Agreement, and was therefore entitled to its attorney's fees.**

**1. TxDOT misconstrues the importance of the Settlement Agreement.**

The parties agree that the Settlement Agreement resulted in the Sign being legally nonconforming with respect to TxDOT's railroad right of way rule—43 Tex.

19

Admin. Code § 21.145(b).[2] AR 2933–34. The parties disagree, however, on the extent to which TxDOT could rely on Section 21.145(b) as a basis for cancelling the Sign's permit or denying an amended permit application.

The Settlement Agreement resulted from the Department's erroneous claim that the Sign's permit should be cancelled due to the Sign's location in the railroad right of way in violation of what was at the time 43 Tex. Admin. Code § 21.148(3), and what was codified at the time of the administrative hearing in this matter as Section 21.145(b). AR 2669. According to TxDOT's designated representative, "it was the Department's position that the sign was illegally maintained or erected within the railroad right-of-way due to what's been called the projection of state right-of-way across [the] railroad right-of-way." AR 2930.

SignAd appealed TxDOT's cancellation of the Sign's permit, which resulted in the litigation of a contested case before the State Office of Administrative Hearings, which the Settlement Agreement referred to as the "SOAH Action." AR 2676.

The Settlement Agreement broadly provided in Paragraph 9 (in the section titled, "Release of Liability"),

> In consideration of the above agreements, the Parties, for themselves, and all who may now or in the future claim, by, through, or under them,

---

[2] "A sign may not be erected or maintained within the right of way of a public roadway, as prohibited by Transportation Code, §393.002, or an area that would be within the right of way if the right of way boundary lines were projected across an area of railroad right of way, utility right of way, or road right of way that is not owned by the state or a political subdivision."

hereby fully and finally release, acquit and forever discharge each other, their attorneys, agents, employees, employers, representatives, insureds, insurers, heirs, executors, administrators, predecessors, successors, assigns, affiliates, subsidiaries, parent companies and all other persons, firms, companies or corporations who might in any way be claimed to be legally responsible or liable, directly or indirectly, to each other in any manner related to the SOAH Action.

AR 2678.

The parties' settlement of the SOAH Action, and more specifically, the foregoing Release of Liability, resulted in the inability of TxDOT to use the Sign's location in the railroad right of way as grounds to deny an amended application for the Sign or cancel the Sign's permit. More specifically, pursuant to Paragraph 9 of the Settlement Agreement, TxDOT "fully and finally release[d]" any "future claim" "directly or indirectly" "related to the SOAH Action." AR 2678.

The SOAH Action concerned the position of the Sign within the railroad right of way, and therefore the Department fully released any "future claim" "related to" that position. As explained below, the foregoing interpretation of the Settlement Agreement is evidenced by the Department's inaction during the years following the parties' execution of the Settlement Agreement.

43 Tex. Admin. Code § 21.176(a)(10) provides, "The department will cancel a permit for a commercial sign if the sign: is accessed, erected, repaired, or maintained from the right of way." The parties entered into the Settlement Agreement in 2011, and for several years thereafter, TxDOT did not make any

21

complaint regarding the Sign. AR 2969–70. If, as TxDOT contends, the Sign's location within the projected right of way was grounds for cancellation of the Sign's permit or denial of an amended permit application, then TxDOT would have cancelled the Sign's permit anytime SignAd entered the railroad right of way and accessed the Sign to change the advertising copy or perform routine maintenance. Indeed, TxDOT cited 43 Tex. Admin. Code § 21.176(a)(10) (providing for cancellation of a permit if a sign "is accessed, erected, repaired, or maintained from the right of way") as a grounds for cancellation of the Sign's permit, AR 2531 & 2165, but did not raise it in its Brief as a grounds for upholding the cancellation of the Sign's permit.

Contrary to TxDOT's contention, the broad release included in the Settlement Agreement is relevant to this case because it negates the reason given by TxDOT to deny SignAd's application to amend the Sign's permit and adjust the Sign away from the expanded highway bridge. AR 2584. TxDOT's Deputy Executive Director wrote in a letter affirming the denial of TxDOT's application to adjust the Sign away from the highway bridge, "The intent of § 21.192(d)(2), despite its awkward wording, is that a multipole sign may make a substantial change if such change renders it compliant with Chapter 21 rules." AR 2584. TxDOT could not present any proof of such "intent" at the administrative hearing, AR 2948–49, but regardless, the Settlement Agreement establishes that the Sign was "compliant with Chapter 21

22

rules" and would continue to maintain compliance following the adjustment of the Sign.

TxDOT expressly denied SignAd's application based on its location in the projected right of way. TxDOT's Commercial Signs Supervisor wrote in her letter denying SignAd's application,

> Inspection finds that the current location of the sign is 170 feet within the right of way when the right of way boundary line is projected across the railroad right of way where the sign is located. ***As such the sign is in violation of 43 TAC § 21.145(b) which prohibits the erection or maintenance of a sign within the public right of way or in an area that would be within the right of way if the boundary lines were projected across the rail road right of way.*** Additionally, due to the signs [sic] location, the existing sign site does not conform to 43 TAC § 21.186 which requires the sign face nearest the highway to have a five foot set back from the right of way boundary. For this reason, the sign is non-conforming and For [sic] the above stated reason(s), the amendment application must be denied.

AR 2545–46 (emphasis added).

TxDOT erroneously denied SignAd's application based on a flawed interpretation of the Settlement Agreement, and as such SignAd should have been and was entitled to carry out the scope of work necessary to adjust the Sign away from the highway bridge.

### 2. SignAd was entitled to its attorney's fees.

TxDOT ignores key provisions of the Settlement Agreement, which authorizes the award of fees to the prevailing party in "any proceeding arising out of

23

any disagreement between the Parties resulting from any provisions of this Release . . .." AR 2679.

TxDOT falsely contends that the attorney's fees provision is inapplicable because "[t]his case does not arise out of a dispute over the settlement agreement." TxDOT Br. 44. TxDOT asserted in its original Notice of Cancellation of the Sign's permit, "In addition, it was found that the total number of poles has been reduced from six to five poles, the sign face has been adjusted *and the face size is not in compliance with the 2011 Settlement Agreement and Release* in which SignAd, Ltd. agreed to maintain two 20' X 33.5' static faces."[3] AR 2534 (emphasis added).

SignAd timely appealed the Department's Notice of Cancellation, AR 2588, which preceded TxDOT's filing of this administrative proceeding. AR 0020. This proceeding clearly arose out of a disagreement over the terms of the Settlement Agreement.

And notably, SignAd is the prevailing party with respect to TxDOT's claim regarding compliance with the Settlement Agreement's provisions concerning the size and configuration of the Sign's faces. AR 2471 ("The ALJ finds TxDOT failed to meet its burden of proof to establish a substantial change was made to the Sign configuration.").

---

[3] Even in its Closing Arguments with Proposed Findings of Fact and Conclusions of Law, TxDOT argued the Sign's permit should be cancelled due to the Sign's location in the projected right of way. AR 2165 ("As such, TxDOT asserts that because the Sign is located 155 feet inside the state's right of way, this Sign's permit should be cancelled.").

24

Citing only to the ALJ's proposal for decision, TxDOT asserts that "if SignAd truly believed there was a legitimate disagreement over the terms of the prior settlement, then it would have filed suit for breach in Harris County under the terms of that agreement." TxDOT Br. 44. TxDOT waived any objection to improper venue by not asserting it in response to SignAd's Second Amended Answer, which included a request for recovery of attorney's fees based on TxDOT's breach of the Settlement Agreement. AR 0473; *see Goepp v. Comerica Bank & Tr., N.A.*, No. 03-19-00485-CV, 2021 WL 2878562, at *3 (Tex. App.—Austin July 9, 2021, no pet.) (objection to venue is waived if not asserted before or concurrently with defendant's answer). TxDOT likewise did not file a motion to transfer venue in this proceeding (before or concurrently with TxDOT's Original Answer) in response to SignAd's claim of breach of contract and request for attorney's fees.

TxDOT cites to *Nazari v. State*, 561 S.W.3d 495, 507 (Tex. 2018), for the proposition that TxDOT would only waive immunity if SignAd were seeking to offset damages recovered by TxDOT. TxDOT Br. 47. However, the state waives immunity in a suit involving germane, connected and properly defensive counterclaims, which are what SignAd has asserted in this case through its claim for breach of contract and recovery of attorney's fees. *Id*. The Settlement Agreement establishes the Sign's nonconforming status, and TxDOT breached the Agreement through its denial of SignAd's application and cancellation of the Sign's permit. The

25

parties' claims are therefore both germane and connected to the Settlement Agreement, and as such, TxDOT does not enjoy sovereign immunity.

TxDOT waived any claim of immunity by entering into a contract that expressly provides for recovery of attorney's fees. *See Dallas Cent. Appraisal Dist. v. Seven Inv. Co.*, 835 S.W.2d 75, 77 (Tex. 1992). Likewise, TxDOT waived its immunity by initiating the proceeding in SOAH. *See Anderson, Clayton & Co. v. State ex rel. Allred*, 122 Tex. 530, 537, 62 S.W.2d 107, 110 (Comm'n App. 1933). Moreover, TxDOT did not file a plea to the jurisdiction or motion to dismiss for want of jurisdiction in the trial court.

## PRAYER

For the reasons stated above, SignAd, Ltd. requests that (1) the trial court's Final Judgment be reversed, (2) the Commission's May 27, 2021 Order be reversed, (3) Permit No. PMT-HBA-13236 be reinstated, (4) these proceedings be remanded for a determination of the attorneys' fees to which SignAd, Ltd. is entitled, and (5) SignAd, Ltd. be awarded such other and further relief to which it may show itself justly entitled.

Respectfully submitted,

**ROTHFELDER & FALICK, L.L.P.**

*/s/ Christopher W. Rothfelder*
Christopher W. Rothfelder
State Bar No. 24084740
crothfelder@rothfelderfalick.com
Richard L. Rothfelder
Texas Bar No. 17318100
rrothfelder@rothfelderfalick.com
1517 Heights Blvd.
Houston TX 77008
Telephone: 713-220-2288
Facsimile: 713-658-8211
**ATTORNEYS FOR PLAINTIFF,**
**SIGNAD, LTD.**

## CERTIFICATE OF COMPLIANCE

I certify that the number of words in this Reply Brief of Appellant SignAd, Ltd. is 6,076 words, not including those in the sections excluded under Tex. R. App. P. 9.4(i)(1).

*/s/ Christopher W. Rothfelder*
Christopher W. Rothfelder

## CERTIFICATE OF SERVICE

I certify that on March 12, 2025, I served a true and correct copy of this document via e-file, upon the counsel or parties listed below.

Joshua Longi
Assistant Attorney General
Texas Department of Transportation
P.O. Box 12548
Austin, TX 78711-2548

*/s/ Christopher. Rothfelder*
Christopher W. Rothfelder

27

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Mary Roch on behalf of Christopher Rothfelder
Bar No. 24084740
maryaroch@yahoo.com
Envelope ID: 98370663
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Reply Brief of Appellant SignAd, Ltd.
Status as of 3/12/2025 12:50 PM CST

Associated Case Party: SignAd, Ltd.

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Christopher W.Rothfelder | | crothfelder@rothfelderfalick.com | 3/12/2025 12:39:17 PM | SENT |
| Richard L.Rothfelder | | rrothfelder@rothfelderfalick.com | 3/12/2025 12:39:17 PM | SENT |

Associated Case Party: Texas Department of Transportation

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joshua Longi | 24095228 | joshua.longi@oag.texas.gov | 3/12/2025 12:39:17 PM | SENT |
| Ally Wickliffe | | ally.wickliffe@oag.texas.gov | 3/12/2025 12:39:17 PM | SENT |